EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Universidad de Puerto Rico<br><br>Peticionaria<br><br>v.<br><br>Unión Bonafide de Oficiales de Seguridad de la Universidad de Puerto Rico<br><br>Recurridos | Certiorari<br><br>2021 TSPR 11<br><br>205 DPR \_\_\_\_ |

Número del Caso: AC-2016-148

Fecha: 2 de febrero de 2021

Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel II

Abogados de la parte peticionaria:

    Lcdo. José J. Santiago Meléndez
    Lcdo. Carlos A. Padilla Vélez

Abogado de la parte recurrida:

    Lcdo. Leonardo Delgado Navarro

Materia: Derecho Laboral e interpretación estatutaria:
Cuando el lenguaje de la ley es sencillo y absoluto no debemos menospreciarlo e intentar proveer algo que el legislador no aprobó. La Universidad de Puerto Rico es una corporación pública comprendida en la definición de instrumentalidad corporativa del Art. 2(11) de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 LPRA sec. 31 et seq. Ello significa que la universidad es un patrono bajo los términos del Art. 2(2) de este estatuto.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Universidad de Puerto Rico

      Peticionaria

          v.                AC-2016-0148

Unión Bonafide de Oficiales de Seguridad de la Universidad de Puerto Rico

      Recurridos


Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES


En San Juan, Puerto Rico, a 2 de febrero de 2021.

Nos corresponde determinar si la Universidad de Puerto Rico se considera "patrono" bajo la Ley de Relaciones del Trabajo, _infra_. Como entendemos que el lenguaje de la ley es claro y tajante nos limitamos a hacer valer el estatuto. Por ello, confirmamos el dictamen del Tribunal de Apelaciones a los efectos de que la Universidad de Puerto Rico es una corporación pública comprendida en la definición de instrumentalidad corporativa del Art. 2(11) de la Ley de Relaciones del Trabajo, _infra_. Ello significa que la universidad es un patrono bajo los términos del Art. 2(2) de este estatuto.

I.

La Unión Bonafide de Oficiales de Seguridad de la Universidad de Puerto Rico (Unión) presentó una petición para que se realizara una investigación y se certificara un representante ante la Junta de Relaciones del Trabajo de Puerto Rico (Junta). Asimismo, solicitó a la Junta reconocer a la Universidad de Puerto Rico (UPR) como patrono al amparo de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 LPRA sec. 31 et seq. (Ley de Relaciones del Trabajo). Además, pidió que, como resultado de esto, se le reconociera a los oficiales de seguridad el derecho a la sindicación y a la negociación colectiva.

La petición se refirió a la División de Investigaciones. Tras varios trámites procesales, la División recomendó reconocer a la UPR como una corporación pública, porque cumple con todos los elementos que la ley requiere para declararla como tal. Además, recomendó la celebración de unas elecciones. Evaluada la petición de la Unión y el informe de la División de Investigaciones, la Junta concluyó que la UPR no es una instrumentalidad corporativa del gobierno de Puerto Rico según se definen estos términos en la Ley de Relaciones del Trabajo, supra. Por lo tanto, tampoco es un patrono bajo esa ley. Ante esto, la Junta desestimó la petición de la Unión.

Inconforme, la Unión presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. Argumentó que el

foro administrativo erró al concluir que la UPR no era un patrono a la luz de la Ley de Relaciones del Trabajo, supra. El foro apelativo intermedio revocó a la Junta. Explicó que la Ley 168-2014, infra, enmendó la definición de instrumentalidades corporativas de la Ley de Relaciones del Trabajo, supra. De esta forma, eliminó el listado de corporaciones públicas que se consideraban instrumentalidades corporativas e incluyó una frase que indica que, a los fines de la ley, se considera una instrumentalidad corporativa a "toda corporación o instrumentalidad pública". Ley 168-2014, infra. Por tanto, resolvió que la UPR, como corporación pública, es un patrono.

Inconforme con lo resuelto por el Tribunal de Apelaciones, la UPR interpuso un recurso de apelación ante este foro. En síntesis, señaló que el Tribunal de Apelaciones erró al concluir que la Ley Núm. 168-2014, infra, hizo aplicable a la UPR la Ley de Relaciones del Trabajo, supra. Tras examinar el recurso presentado por la UPR, lo acogimos como certiorari y lo expedimos en reconsideración. Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia planteada.

## II.

La controversia que tenemos ante nuestra consideración no es complicada. Corresponde determinar si la UPR es una

instrumentalidad corporativa, factor clave para determinar quién es patrono, según definido por ley.

En Puerto Rico los derechos a organizarse, negociar y a llevar a cabo otras actividades concertadas son de rango constitucional. La Asamblea Constituyente consagró estos derechos a favor de los trabajadores de empresas, negocios y patronos privados, así como de algunos empleados públicos. Véase, 4 Diario de Sesiones de la Convención Constituyente 2573 (1961). Expresamente, la sección 17 de la Carta de Derechos establece que "[l]os trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar". Art. II, Sec. 17, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 388-389. Además, con el propósito de asegurar estos derechos, la sección 18 de la Carta de Derechos otorgó "en sus relaciones directas con sus propios patronos, el derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales". Art. II, Sec. 18, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 391.

Como vemos, los derechos conferidos en estas secciones solo se hicieron extensivos a los empleados de patronos privados y de las agencias o instrumentalidades del gobierno que funcionan como empresas o negocios privados.

Con relación a los demás empleados públicos, "[l]a Convención Constituyente creyó prudente dejar en manos de la Legislatura el tratamiento que habría de darse a estos empleados excluidos". J.R.T. v. Asoc. Servs. Medicos Hosp., 115 DPR 360, 365 (1984) (citando a J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982 T. III, pág. 206).

Si bien es cierto que los derechos de los trabajadores a organizarse y llevar a cabo otras actividades concertadas son de rango constitucional, la Ley de Relaciones del Trabajo, supra, ya reconocía estatutariamente algunos de estos derechos. Esta ley ha sido objeto de varias enmiendas. Originalmente, la ley definía el término patrono, y con ello su alcance, de la siguiente forma:

> El término 'patrono' significa la persona (incluyendo las instrumentalidades corporativas del Gobierno de Puerto Rico) que contrata los servicios de otra, e incluye a cualquier persona que actúe o realice gestiones en interés de un patrono, dentro de los límites de su autoridad, ya sea esta expresa o implícita; pero no incluye (excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico) al Gobierno ni ninguna subdivisión política del mismo; ni organización obrera alguna o persona que actué a nombre de tal organización, salvo cuando actué como patrono. Art. 2(2) de la Ley Núm. 130 de 8 de mayo de 1945, 1945 Leyes de Puerto Rico 409.

Posteriormente, la definición fue enmendada para que leyera como sigue:

> El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un

patrono directa o indirectamente, pero no incluirá, excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo; Disponiéndose, que incluirá, además, a todo individuo, sociedad u organización que intervenga a favor de la parte patronal en cualquier disputa obrera o negociación colectiva. Art. 2 (2) de la ley Núm. 6-1946. 1946 Leyes de Puerto Rico 21-23.

Por su parte, el término instrumentalidades corporativas se definía originalmente así:

El término "instrumentalidades corporativas" se refiere a las corporaciones que posean bienes y que pertenezcan al Gobierno de Puerto Rico o estén bajo su inmediata dirección, incluyendo la Autoridad de Tierras, la Compañía Industrial, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, el Servicio de Riego de Isabela, la Autoridad de Transporte, la Autoridad de Comunicaciones, el Servicio de Acueductos y Alcantarilladlos, las empresas similares que se establezcan en el futuro y todas las subsidiarias de empresas de servicio público. Art. 12(13) de la Ley Núm. 130 de 8 de mayo de 1945, 1945 Leyes de Puerto Rico 413.

Más tarde, la Ley Núm. 6 de 7 de mayo de 1946 modificó esta definición, por lo que hasta el 2014, la ley definía "instrumentalidades corporativas" de esta manera:

El término instrumentalidades corporativas significa las siguientes corporaciones que poseen bienes pertenecientes a, o que están controladas por, el Gobierno de Puerto Rico: La Autoridad de Tierras, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, la Compañía de Fomento de Puerto Rico (Compañía de Fomento Industrial), la Autoridad de Transporte, la Autoridad de Comunicaciones, y las subsidiarias de tales corporaciones, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. Art. 2 (11) de la ley Núm. 6-1946. 1946 Leyes de Puerto Rico 25.

Como vemos, la primera parte de la definición permaneció básicamente inalterada con esta enmienda. Sin embargo, el legislador eliminó unas corporaciones de la lista y añadió otras. Además, eliminó la parte que incluía a "todas las subsidiarias de empresas de servicio público". En cambio, incluyó a "aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario".

Así pues, no son patronos el Gobierno de Puerto Rico ni sus subdivisiones políticas. Estos quedan fuera de la jurisdicción de la Junta de Relaciones del Trabajo y del alcance de la ley. En su lugar, las agencias del gobierno central se ubican al palio de la Ley Núm. 45-1998, conocida como la Ley de Relaciones del Trabajo para el Servicio Público, 3 LPRA sec. 1451 et seq. Esta ley confirió a los empleados públicos en las agencias tradicionales del gobierno central, a quienes no les aplica la Ley de Relaciones del Trabajo, Íd., el derecho a organizarse para negociar sus condiciones de trabajo. Sin embargo, mediante la aprobación de la Ley Núm. 206-2012, se enmendó la Ley de Relaciones del Trabajo para el Servicio Público para disponer expresamente que los empleados de la UPR queden excluidos de las disposiciones de esa ley. Por lo tanto, en ninguna circunstancia se puede considerar a la UPR como un patrono bajo esa ley.

En cambio, hasta el 2014, el Art. 2 de la Ley de Relaciones del Trabajo consideraba como patronos a

> las empresas privadas y sus agentes, las instrumentalidades corporativas del Gobierno [expresamente enumeradas] y sus subsidiarias – J.R.T. v. Junta del Muelle, 71 D.P.R. 154 (1950); A.A.A. v. Unión Empleados A.A.A., supra [105 DPR 437 (1976)]– y aquellas otras agencias del Gobierno que se dedican o pueden dedicarse a negocios lucrativos –J.R.M. v. J.R.T., 108 D.P.R. 448 (1979). J.R.T. v. Asoc. Servs. Médicos Hosp., 115 DPR 360, 366 (1984).

Al amparo de estas definiciones, la Junta de Relaciones del Trabajo resolvió que, aunque la UPR es una corporación pública, no era una de las corporaciones enumeradas en la ley ni tampoco era una "empresa similar" a estas. Tampoco operaba como un negocio lucrativo ni realizaba actividades con objetivo pecuniario. Por lo tanto, una de sus subsidiarias tampoco era un patrono sujeto a su jurisdicción. Corporación de Servicios Médicos Universitarios, Dec. 1455 (JRTPR 2012). A la misma conclusión llegó el Secretario de Justica al exponer que "la Universidad no es una de las instrumentalidades corporativas cobijadas por la Ley Núm. 130". Op. Sec. Just. Núm. 56 de 1956, véase, además, Op. Sec. Just. Núm. 7 de 1993.

Por nuestra parte, en 1994 dejamos sin resolver si la UPR era un patrono para efectos de la Ley de Relaciones del Trabajo. En esa ocasión expresamos que "[e]videntemente, resolver tal asunto podría tener implicaciones serias más allá de los confines de este caso. Podría afectar, por ejemplo, a otros empleados de la

U.P.R. que jurídicamente estén protegidos, dependiendo ello únicamente del status de la U.P.R. como patrono" U.P.R. v. Asoc. Pur. Profs. Universitarios, 136 DPR 335, 396 (1994). En cambio, nos limitamos a resolver que los profesores universitarios eran "empleados gerenciales" que, como tales, carecían del derecho a la negociación colectiva. Resolver expresamente si la UPR es un patrono para efectos de la Ley de Relaciones del Trabajo quedó pendiente para "alguna otra ocasión". Íd. Precisamente esa es la controversia que tenemos ante nuestra consideración en esta ocasión, pero con un elemento adicional, la aprobación de la Ley Núm. 168 de 29 de septiembre de 2014 (Ley Núm. 168-2014).

La Ley Núm. 168-2014 enmendó la Ley de Relaciones del Trabajo, supra. Según la Exposición de Motivos, el propósito principal de las enmiendas fue "aclarar la jurisdicción respecto a la intervención de la Rama Judicial en los quehaceres de la Junta, para modernizar o liberalizar el proceso de notificación de órdenes interlocutorias y determinaciones finales, así como otros cambios de carácter técnico". Exposición de Motivos de la Ley Núm. 168-2014.

Las enmiendas incluyeron una modificación al inciso 11 del Art. 2 de la Ley de Relaciones del Trabajo, supra. Se eliminó el listado de corporaciones públicas, algunas de las cuales ya habían desaparecido. Véase Informe Positivo sobre el Proyecto de la Cámara 1375 de 13 de noviembre de

2013, Comisión de Asuntos Laborales y Sistemas de Retiro del Servicio Público, 2da Sesión Ordinaria, 17ma Asamblea Legislativa, pág. 5. Además, se eliminó la referencia a "empresas similares que se establezcan en el futuro" y se sustituyó por una referencia a "toda corporación pública y sus subsidiarias". Ahora, después de la enmienda, las instrumentalidades corporativas se definen así:

> (11) Instrumentalidades corporativas. – Significa **toda corporación o instrumentalidad pública y sus subsidiarias**, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, **y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario**. Art. 2(11) de la Ley de Relaciones del Trabajo, 29 LPRA sec. 63(11). (énfasis nuestro).

El historial legislativo guarda silencio sobre el motivo de la enmienda. Sin embargo, su impacto es significativo. Hasta 2014, solo estaban sujetas a la ley como patrono: (1) las corporaciones públicas expresamente enumeradas en el inciso 11 del Art. 2 y las que fueran empresas similares, así como (2) las agencias del gobierno que se dedicaban a negocios lucrativos o actividades para beneficio pecuniario. Después de la enmienda de la Ley Núm. 168-2014, la primera categoría se sustituyó por "todas" las corporaciones públicas.

Por lo tanto, son "patronos" sujetos a la Ley de Relaciones del Trabajo: (1) las empresas privadas y sus agentes, (2) todas las instrumentalidades corporativas del Gobierno y sus subsidiarias, y (3) aquellas otras agencias

del Gobierno que se dedican o pueden dedicarse a negocios lucrativos. Como se ve, **ahora toda corporación pública es un patrono; solo las que no son corporaciones, pero son agencias del Gobierno, requieren un ánimo de lucro para considerarse "patrono" según la ley.**

La UPR es una corporación pública. El Art. 3.1 de la Ley de la Universidad de Puerto Rico, Ley Núm. 1 de 20 enero 1966, según emendada, 18 LPRA sec. 602a, dispone que la UPR "tendrá todas las atribuciones, responsabilidades y funciones propias de una entidad corporativa encargada de la educación superior". Esto incluye "demandar y ser demandada, adquirir y poseer bienes e inmuebles, hipotecar, vender, o en cualquier forma enajenar los mismos; contraer deudas; celebrar contratos; invertir sus fondos en forma compatible con los fines y propósitos de esta ley; adoptar y usar un sello oficial; aceptar y administrar donaciones, herencias y legados". Art. 3.1 Ley de la Universidad de Puerto Rico, supra.

Establecido eso, la UPR es, entonces, un "patrono", según la Ley de Relaciones del Trabajo, sujeta por ello a la jurisdicción de la Junta de Relaciones del Trabajo de Puerto Rico. Ese es el mismo razonamiento que seguimos al resolver que la UPR, como corporación pública, está sujeta a la Ley Núm. 115-1991, conocida como Ley de Represalias, 29 LPRA sec. 194 et seq. Véase, Cordero Jiménez v. UPR, 188 DPR 129 (2013). Rechazamos entonces la defensa de que la ley no aplicaba a la UPR porque esta no opera como un

negocio privado. Al igual que lo que concluimos entonces, aquí tampoco hay ni siquiera un indicio de que el legislador quiso mantener la exclusión de la UPR como se había interpretado. Por el contrario, esa exclusión choca ahora con el texto de la ley tras la enmienda de 2014.

III.

Según la Opinión Disidente, como la Ley Núm. 45-1998 se aprobó para regular los derechos de los empleados públicos que la Ley de Relaciones del Trabajo no cobijaba e incluyó como patrono a las corporaciones públicas que no operan como negocios privados, esto confirma que la Ley de Relaciones del Trabajo se extiende únicamente a las corporaciones públicas que operen como negocios privados y que así debe continuar. Por ello, la disidencia asevera que "toda corporación" no significa "toda" y que la UPR no es un patrono según la Ley de Relaciones del Trabajo. Así, basándose en interpretaciones que, precisamente, preceden la enmienda de 2014, plantea la existencia de una supuesta tensión entre la intención legislativa y el contenido comunicativo de la disposición de la ley que está en controversia.

Sostiene que "[a]unque la Ley Núm. 168-2014 enmendó el texto legal para que diga que la Ley de Relaciones del Trabajo aplica a "toda corporación o instrumentalidad pública", "la intención verdadera del legislador era que continuara aplicando a un grupo limitado de corporaciones públicas". Opinión Disidente pág. 21. Añade que nuestra

obligación al interpretar las leyes es "identificar" la intención legislativa. Íd., pág. 18. Así, sostiene que "[e]se examen podría revelar que el texto de la ley realmente no es claro, que no refleja fielmente la intención legislativa o que se cometió un error o inadvertencia al adoptarlo". Íd., pág. 19. Por otra parte, en el mismo intento de identificar la intención legislativa, la Opinión Concurrente llega al resultado contrario. Esta sostiene que "toda corporación" no significa "toda" pero sí incluye a la UPR ya que, según asevera, para determinar qué corporación se considera patrono según la Ley de Relaciones del Trabajo hay que acudir a la Ley Núm. 45-1998 para ver si la corporación está cobijada por esa ley.

Como vemos, de las opiniones que se emiten en el día de hoy se aprecian visiones encontradas sobre cuál debe ser el rol de la Rama Judicial al momento de adjudicar controversias. Nuestra postura como integrantes de este Tribunal es guardar fidelidad a nuestro ordenamiento jurídico y entendemos que realizar un análisis de lo que dice la ley nos conduce a ese resultado. Se trata de un entendido básico: Es simplemente incompatible con un gobierno democrático determinar el significado de una ley basándonos en lo que nos parece que el legislador quiso decir, en lugar de por lo que el legislador en efecto promulgó. A. Scalia, The Essential Scalia: On the

Constitution, the Courts, and the Rule of Law (J.S. Sutton

y E. Whelan, Eds.), New York, Crown Forum, 2020, pág. 26.[1]

"[E]l proceso legislativo… es demasiado complejo,

demasiado dependiente de su curso y demasiado opaco para

permitir a los jueces reconstruir si la legislatura

hubiera resuelto alguna cuestión particular de manera

diferente a la forma en que el texto estatutario claro

resuelve esa cuestión". J. F. Manning, The Absurdity

Doctrine, 116 Harv. L. Rev. 2387, 2410 (2003).[2] Por estas

razones, si un juez reduce o amplía los términos de un

texto legal claro, corre el riesgo de alterar un acuerdo

legislativo cuidadosamente elaborado pero que tal vez no

se documentó. Íd., págs. 2411-12.

En ese sentido, el profesor John F. Manning plantea

que el textualismo no pretende excluir toda consideración

de propósito o política de la interpretación estatutaria.

Íd. pág. 2408. Por el contrario, nos explica lo siguiente:

> [B]ecause all statutory language is at least
> somewhat open-textured, textualists acknowledge
> that "a certain degree of discretion" is
> inevitable in "most" judicial decisionmaking.
> When statutory ambiguity leaves room for the
> exercise of such discretion, textualists believe
> it is appropriate, if not necessary, for an
> interpreter to consider a statute's apparent
> background purpose or policy implications in
> choosing among competing interpretations.
> Conversely, **when a statutory text unambiguously
> points to a specific result, textualists find it**

---

[1] "[I]t is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated." A. Scalia, op. cit., pág. 26.

[2] "The legislative process, they argue, is too complex, too path-dependent, and too opaque to allow judges to reconstruct whether Congress would have resolved any particular question differently from the way the clear statutory text resolves that question." J.F. Manning, supra, pág. 2410.

> ***illegitimate to alter that command to reflect
> more accurately the statute's apparent
> background purpose. Indeed, an unwillingness to
> sacrifice textually specified means for more
> remote statutory ends lies at the core of modern
> textualism.*** <u>Íd</u>. págs. 2408-09.

Después de todo, "[l]os hombres pueden intentar lo que quieran; lo único que nos obliga son las leyes que ellos aprueban". A. Scalia, <u>op. cit</u>., pág. 26 (énfasis suplido).[3]

Adviértase que esto va de la mano con la norma de hermenéutica más básica del Código Civil. Véase, Art. 19 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. ___. Así, hemos expresado reiteradamente que cuando una ley es clara y libre de ambigüedad, el texto comunica lo que la Asamblea Legislativa quiso hacer. Véanse, además, Art. 14 del Código Civil de 1930, vigente cuando se atendió este caso en la Junta; <u>Cordero Jiménez v. UPR</u>, <u>supra</u>, pág. 138; <u>S.L.G. Rivera Carrasquillo v. A.A.A.</u>, 177 DPR 345, 362 (2009); <u>Román v. Superintendente de la Policía</u>, 93 DPR 685, 688 (1966). Cuando el lenguaje de la ley es sencillo y absoluto no debemos menospreciarlo e intentar proveer algo que el legislador no intentó aprobar. Ante el texto claro de un estatuto no debemos suplir omisiones al interpretarlo. <u>Pueblo v. Rivera Surita</u>, 202 DPR 800, 812 (2019). Esto se debe a que "[e]l juez es un intérprete, y no un creador". <u>Clínica Juliá v. Sec. de Hacienda</u>, 76 DPR 509, 521 (1954). Por eso, no podemos incorporar al estatuto una lista que el legislador

---

[3] *"Men may intend what they will; but it is only the laws that they enact which bind us."* A. Scalia, <u>op. cit</u>., pág. 26.

derogó expresamente. Hacer lo contrario conlleva invadir las funciones de la Asamblea Legislativa. San Juan v. Banco Gubernamental de Fomento, 140 DPR 873 (1996); Lasalle v. Junta Dir. A.C.C.A., 140 DPR 694 (1996).

Más aún, por tratarse de una ley con propósitos reparadores en el sector laboral, las exclusiones de su cubierta deben surgir de forma clara en el texto de la ley. En el proceso interpretativo, toda duda en cuanto a su aplicación o alcance deberá resolverse a favor del empleado. Véanse, Cordero Jiménez v. UPR, supra, pág. 139; López Vega v. F. Vega Otero, Inc., 103 DPR 175, 177 (1974). Por lo tanto, "la exclusión de un empleado de los beneficios de la legislación laboral debe ser clara y convincente". Cordero Jiménez v. UPR, supra, pág. 140 (citando a López Vega v. F. Vega Otero Inc., 103 DPR 175,177 (1974)). Como expresó el Tribunal Supremo federal recientemente: "Cuando los términos expresos de un estatuto nos dan una respuesta y las consideraciones extratextuales sugieren otra, no hay discusión. **Solo la palabra escrita es la ley, y todas las personas tienen derecho a su beneficio.**" Bostock v. Clayton County, Georgia, 140 S.Ct. 1731, 1737 (2020) (traducción nuestra; énfasis suplido).[4]

IV.

---

[4] "When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." Bostock v. Clayton County, Georgia, 140 S.Ct. 1731, 1737 (2020).

Tal y como acertadamente resolvió el Tribunal de Apelaciones, el Art. 2(2) de la Ley de Relaciones del Trabajo, supra, excluye de la definición de "patrono" al gobierno central, pero incluye a "las instrumentalidades corporativas del Gobierno de Puerto Rico…". Ahora, después de la enmienda de 2014, se amplió la definición de "instrumentalidad corporativa" como "patrono" para incluir a todas las corporaciones públicas y no solo a las que estaban enumeradas expresamente en la Ley de Relaciones del Trabajo y a las que fueran similares. No se puede plantear que "toda corporación pública" significa algunas sí, pero otras no, o que nuestra interpretación está subordinada a la de otra ley inaplicable, sin nada en el historial que así lo señale.

Por lo tanto, resulta innecesario examinar si la UPR opera o no como una empresa privada o con fines de lucro. La enmienda de 2014 a la Ley de Relaciones del Trabajo controla la aplicación del estatuto a la UPR. No está en controversia que la UPR es una corporación pública. Véanse, Art. 3.1 de la Ley de la Universidad de Puerto Rico, supra; Cordero Jiménez v. UPR, supra, pág. 146; U.P.R. v. Asoc. Pur. Profs. Universitarios, supra; Sepúlveda v. U.P.R., 115 DPR 526, 527 (1984).

Reiteradamente, hemos resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Camacho Torres v. AAFET, 166 DPR 66, 91 (2006); T-Jac, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80

(1999); <u>Murphy Bernabe v. Tribunal Superior</u>, 103 DPR 692, 699 (1975). Sin embargo, esta cede cuando "la interpretación estatutaria es contraria al lenguaje o propósito expreso del estatuto". D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 3ra ed., Colombia, Ed. Forum, 2013, Sec. 9.4, pág. 717. Todas las corporaciones públicas son "patronos". "Todas" significa la totalidad y no solo algunas. Coincidimos con el Tribunal de Apelaciones en que la Junta no adjudicó el caso conforme a derecho.

Cualquier preocupación acerca del impacto de la decisión en el ambiente laboral y las finanzas de la UPR, aunque legítima, tiene que ceder ante el lenguaje claro de la ley. "Es el significado del texto y no el contenido de las expectativas o intenciones de nadie, lo que nos obliga como ley". Laurence H. Tribe, "Comment", en Antonin Scalia, <u>A Matter of Interpretation: Federal Courts and the Law</u> 65 (1997) (traducción nuestra). En síntesis, cuando la ley es clara, no corresponde a los tribunales evaluar su sabiduría. Véase, Art. 21 del Código Civil de 1930, vigente cuando se atendió este caso en la Junta.

No reconocer eso nos coloca en la función ilegítima de legislar por la vía judicial. Esa es una tarea que la Constitución reserva a los funcionarios elegidos por el Pueblo y no a las nueve personas no electas que componemos este Tribunal Supremo.

Desde 2014 todas las corporaciones públicas están sujetas a la aplicación de la Ley de Relaciones del Trabajo, supra. Como la UPR es una corporación pública, está sujeta a la aplicación de la referida legislación. Se presume que al legislar se tomó en cuenta el efecto de la ley sobre las finanzas de la UPR. De todos modos, hacer cualquier cambio a esa política pública recogida en la ley corresponde a la Asamblea Legislativa.

V.

Por todo lo anterior, confirmamos el dictamen del Tribunal de Apelaciones a los efectos de que la UPR es un patrono bajo la definición de la Ley de Relaciones del Trabajo, supra. Corresponde a la Junta de Relaciones del Trabajo atender la Petición de Investigación y Certificación de representante que la Unión presentó, y a esos efectos se devuelve el caso a ese foro.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universidad de Puerto Rico

    Peticionaria

       v.                     AC-2016-0148

Unión Bonafide de Oficiales
de Seguridad de la
Universidad de Puerto Rico

    Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 2 de febrero de 2021.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se confirma el dictamen del Tribunal de Apelaciones a los efectos de que la UPR es un patrono bajo la definición de la Ley de Relaciones del Trabajo, supra. Corresponde a la Junta de Relaciones del Trabajo atender la Petición de Investigación y Certificación de representante que la Unión presentó, y a esos efectos se devuelve el caso a ese foro.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez concurre con opinión escrita. La Jueza Asociada señora Pabón Charneco concurre sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez disiente con opinión escrita. El Juez Asociado señor Colón Pérez no intervino.

               José Ignacio Campos Pérez
           Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Universidad de Puerto Rico<br><br>Peticionaria<br><br>v.<br><br>Unión Bonafide de Oficiales de Seguridad de la Universidad de Puerto Rico<br><br>Recurrida | AC-2016-0148 | Certiorari |

Opinión concurrente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 2 de febrero de 2021.

La controversia ante nos requiere determinar si la Universidad de Puerto Rico (UPR) es una instrumentalidad corporativa, según definida en la Ley de Relaciones del Trabajo de Puerto Rico, infra. Ciertamente, la Opinión Mayoritaria y la Disidente contestan esa interrogante tanto en la afirmativa como en la negativa, respectivamente. Sin embargo, al así hacerlo, ambas Opiniones acuden a extremos que se alejan de las normas interpretativas y de hermenéutica que requiere esta controversia. Por una parte, la Opinión Mayoritaria da un peso desmedido y aislado a la letra de la ley, sin tomar en cuenta el contexto y el historial legislativo y, peor aún, las consecuencias jurídicas de lo dictaminado en la otra legislación laboral de relaciones del trabajo. Ello, a pesar de que la controversia ante nuestra consideración tiene efectos

relevantes y consecuencias jurídicas que van más allá del remedio que solicita la peticionaria y de las operaciones de la UPR. Por otra parte, la Opinión Disidente se concentra únicamente en la naturaleza de la última enmienda legislativa realizada.

Por considerar que el análisis jurídico requiere reconocer que en nuestro Derecho Laboral las disposiciones de la Ley de Relaciones del Trabajo de Puerto Rico, infra, y la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, infra, se complementan entre sí, me veo en la obligación de concurrir con el resultado al cual llega una Mayoría de este Tribunal. Me explico.

## I

El trasfondo fáctico y procesal de la controversia de epígrafe está adecuadamente reseñado en la Opinión Mayoritaria. En síntesis, la Unión Bonafide de Oficiales de Seguridad de la Universidad de Puerto Rico (Unión) le solicitó a la Junta de Relaciones del Trabajo (Junta) que reconociera a la UPR como un patrono bajo la Ley de Relaciones del Trabajo para que, consecuentemente, sus empleados tuviesen derecho a la sindicación y a la negociación colectiva. La Junta desestimó la solicitud y concluyó que la UPR no era un patrono ni una instrumentalidad corporativa, según se definen estos términos en la Ley de Relaciones del Trabajo.

Inconforme, la Unión interpuso un recurso de revisión judicial ante el Tribunal de Apelaciones. Posteriormente, el Tribunal de Apelaciones revocó el dictamen de la Junta por entender que no se adjudicó conforme a derecho e indicó que la UPR sí se ubicaba bajo la definición de instrumentalidades corporativas de la Ley de Relaciones del Trabajo y, por consiguiente, era un patrono bajo la referida ley. En desacuerdo, la UPR recurrió a este Tribunal y, en reconsideración, expedimos. A la luz de los hechos anteriormente expuestos, veamos si la Universidad de Puerto Rico es un patrono para los efectos de la Ley de Relaciones del Trabajo.

## II

En Puerto Rico, los derechos de los trabajadores a organizarse, negociar y realizar determinadas acciones concertadas son concedidos por norma constitucional o estatutaria. Inicialmente, estos derechos fueron garantizados por la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 LPRA sec. 31 et. seq. (Ley de Relaciones del Trabajo).[5] Luego, con la aprobación de la Constitución de Puerto Rico en 1952, se elevó como norma constitucional los derechos concedidos al amparo de la Ley de Relaciones del Trabajo a los empleados privados y a

---

[5] La implicación principal de la codificación de esta norma estatutaria en la Constitución estribó en que, de esta manera, la Asamblea Legislativa estaba impedida de limitar estos derechos ya otorgados, salvo que se realice una enmienda constitucional.

los trabajadores de las "agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados. . .". Art. II, Secs. 17-18, Const. ELA, LPRA, Tomo 1. Por esto, los derechos de los trabajadores a la sindicación no eran extensivos al servicio público, a menos que se tratara de una instrumentalidad corporativa del gobierno que funcionara como negocio privado.[2]

A diferencia de la Constitución, la <u>Ley de Relaciones del Trabajo</u> sí proveía una lista específica de cuáles eran aquellas instrumentalidades corporativas a las que le aplicaba la Ley. Asimismo, hasta el 2014, la definición de instrumentalidades corporativas consistía en una serie de corporaciones públicas **expresamente enumeradas**, y a aquellas otras agencias del Gobierno que se dedicaban o podían dedicarse a negocios lucrativos o pecuniarios.[6] Ley Núm. 6-1946, (Parte 2) 1946 LPR 25.

---

[2] 4 Diario de Sesiones de la Convención Constituyente 2574-2575 (1951). Según la Asamblea Constituyente, el razonamiento de haberle negado el derecho a la negociación colectiva a los empleados públicos tradicionales respondió a que cuando los empleados operan fuera de los supuestos de la empresa privada, es porque el empleo es incidental al servicio y a la operación funcional del gobierno. Es decir, querían mantener un control de aquellos puestos que representaban intrínsecamente el servicio público. Íd., en la pág. 2575.

[6] Hasta entonces, el referido artículo leía como sigue:

Significan las siguientes corporaciones que poseen bienes pertenecientes a, o que están controladas por, el Gobierno de Puerto Rico: [lista de corporaciones públicas expresamente enumeradas], y las subsidiarias de tales corporaciones, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o actividades que tengan por objeto un

Ahora bien, en aras de garantizar el derecho a
organizarse y a negociar colectivamente a los empleados del
gobierno central, en el 1998 se aprobó la Ley de Relaciones
del Trabajo para el Servicio Público de Puerto Rico, Ley Núm.
45-1998, 3 LPRA sec. 1451 et. seq. (Ley de Relaciones del
Trabajo para el Servicio Público). El propósito de esta ley es
"conferirle a los empleados públicos en las agencias
tradicionales del gobierno central, a quienes no aplica la Ley
de Relaciones del Trabajo de Puerto Rico, el derecho a
organizarse para negociar sus condiciones de trabajo. . .".
Exposición de motivos, Ley Núm. 45-1998, (Parte 1) 1998 LPR
148. Para que esta ley cobije a los empleados y las empleadas
en el servicio público, su patrono debe cumplir con los
criterios especificados en el estatuto. A esos fines, la ley
precisa que se considerarán agencias gubernamentales
"[c]ualquier subdivisión de la Rama Ejecutiva del Gobierno de
Puerto Rico, tales como departamentos, juntas, comisiones,
administraciones, oficinas, bancos y **corporaciones públicas
que no funcionen como negocios privados**; o cualquiera de sus
respectivos jefes, directores, ejecutivos o personas que
actúen en su representación". (Énfasis suplido). Ley de
Relaciones del Trabajo, supra, Art. 3(b).[7] Nótese que,

---

beneficio pecuniario. Art. 2(11) de la Ley Núm. 6-1946, (Parte
2) 1946 LPR 25.

[7]Igualmente, la Ley de Relaciones del Trabajo para el Servicio Público
incluye a "los empleados con nombramientos en un puesto regular de
carrera, de cualquier agencia del gobierno central". Íd., Art. 4.3(a).

implícitamente, se excluyeron a aquellas corporaciones

públicas que funcionan como negocios privados por éstas estar

incluidas bajo la Ley de Relaciones del Trabajo. Con esto, se

evitó que un mismo patrono se encuentre cobijado por ambas

leyes al mismo tiempo.

La Ley de Relaciones del Trabajo para el Servicio Público

incluye, además, una lista taxativa de funcionarios y

empleados excluidos de todas las unidades apropiadas para

fines de negociación colectiva.[8] Paradójicamente, mediante la

aprobación de la Ley Núm. 206-2012, se enmendó la Ley de

Relaciones del Trabajo para el Servicio Público para disponer,

en lo pertinente, que "[l]os empleados de la Universidad de

---

[8]La lista de empleados excluidos es la siguiente:

(1) Empleados con nombramientos de confianza, transitorios, irregulares, por jornal y empleados confidenciales.
(2) Funcionarios sujetos a confirmación legislativa.
(3) Los supervisores de todas las agencias, según este término ha sido definido en esta Ley. (4) Los empleados de la Comisión.
(5) Los empleados de la Oficina Central.
(6) Los empleados de la Oficina Propia del Gobernador y de unidades administrativas u oficinas adscritas que ejercen funciones confidenciales u ocupan puestos de confianza.
(7) Los empleados de la Oficina de Gerencia y Presupuesto.
(8) Los empleados que presten servicios para el Gobierno de Puerto Rico o para cualquiera de sus agencias o instrumentalidades en oficinas fuera de Puerto Rico.
(9) Los empleados de la Comisión Estatal de Elecciones.
(10) Los miembros de la Policía, los empleados y funcionarios civiles estatales de la Guardia Nacional de Puerto Rico y los agentes, empleados y funcionarios del Departamento de Justicia.
(11) Los empleados de la Oficina de [É]tica Gubernamental.
(12) Organismos creados con un propósito específico por un término fijo. Íd., Art. 4.2.

Puerto Rico quedan excluidos de las disposiciones de esta Ley".[9] Un análisis del historial legislativo de esta enmienda no refleja cuál fue la intención legislativa al excluir, de manera tajante, a la Universidad de Puerto Rico.[10] En consecuencia, bajo ninguna instancia, la UPR puede ser considerada como un patrono bajo la <u>Ley de Relaciones del Trabajo para el Servicio Público</u>.

Por otra parte, las instrumentalidades corporativas de la <u>Ley de Relaciones del Trabajo</u> fueron modificadas por la Ley Núm. 168-2014. Esta ley, en su exposición de motivos, señala que su propósito fue atemperar la <u>Ley de Relaciones del Trabajo</u> a, entre otras cosas, los cambios que ha sufrido la Ley de la Judicatura de Puerto Rico, a los medios de notificaciones de órdenes de la Junta, y así como otros cambios de carácter técnico. Ley Núm. 168-2014, (Parte 2) 2014 LPR 1639-1640. En cuanto a lo que esta controversia respecta, el cambio más importante de la Ley 168-2014 fue que modificó sustancialmente la definición de instrumentalidades corporativas, definiéndose actualmente como sigue:

> [1] **Significa toda corporación** [2] **o instrumentalidad pública y sus subsidiarias,** [3] e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, [4] y aquellas otras agencias del Gobierno que se dedican o pueden dedicarse en el futuro a negocios

---

[9]Íd., Art. 4.2(c).

[10]El tracto legislativo muestra particular importancia a la enmienda que excluyó a los funcionarios civiles y estatales de la Guardia Nacional, más no hace referencia significativa que arroje luz sobre porqué se excluyó específicamente a la Universidad de Puerto Rico.

lucrativos o a actividades que tengan por objeto un beneficio pecuniario. (Énfasis suplido). Ley de Relaciones del Trabajo, supra, Art. 2(11).

Como puede observarse, a pesar de que la lista taxativa de corporaciones públicas fue sustituida por "toda corporación o instrumentalidad pública", se mantuvo en la definición el criterio de aquellas otras agencias del Gobierno que se dediquen al negocio lucrativo o pecuniario.

No empece a que esta enmienda resultó ser, a nuestro juicio, la más drástica producida por la Ley 168-2014, fue escasamente discutida por la Asamblea Legislativa. Según el Informe Positivo de la Comisión del Proyecto de Ley, la enmienda a la definición de instrumentalidades corporativas "elimina la lista de corporaciones a las que hace referencia, las cuales en la actualidad no existen u operan bajo un nombre distinto. En atención a ello, se incluye el término 'toda corporación o toda instrumentalidad pública'".[11] De igual manera, del Informe Positivo surge que, a petición de la Comisión, la Junta de Relaciones del Trabajo de Puerto Rico y la Oficina de Administración de los Tribunales (OAT) presentaron su posición y recomendaciones sobre el proyecto de ley.

Particularmente, la enmienda a la definición de instrumentalidades corporativas no fue discutida por la Junta

---

[11] Informe positivo sobre el P. de la C. 1375, Com. de Asuntos Laborales y Sistemas de Retiro del Servicio Público, Cámara de Representantes, 13 de noviembre de 2013, 2da Ses. Ord., 17ma Asam. Leg., en la pág 5.

de Relaciones del Trabajo de Puerto Rico, pero sí por la OAT.[12] Cónsono con esto, la OAT señaló en su Ponencia que "no debe incluirse el término 'instrumentalidad pública' en dicha definición, toda vez que debe referirse sólo a corporaciones públicas y no incluir a toda instrumentalidad gubernamental".[13] La OAT objetó la inclusión de toda instrumentalidad gubernamental en la definición porque, acorde a la jurisprudencia de este Tribunal, a ésta sí se les exige el ánimo de beneficio lucrativo o pecuniario para que puedan ser consideradas patrono bajo la Ley.[14] Asimismo, concluyó "que no a todas las instrumentalidades del gobierno le son de aplicación las disposiciones de la Ley de Relaciones del Trabajo, *supra*. Por lo tanto, no debe incluirse a toda instrumentalidad pública en el texto del inciso (11) de su Artículo 2, según pretende la medida legislativa bajo estudio".[15]

En ese sentido, destacamos que la OAT solamente objetó la inclusión de "toda instrumentalidad gubernamental" en la definición propuesta de instrumentalidades corporativas; ante

---

[12]Jeffrey J. Pérez Pagán, Ponencia de la Junta de Relaciones del Trabajo en torno al P. de la C. 1375, P. de la C. 1375 de 19 de septiembre de 2013, Com. de Asuntos Laborales y Sistemas de Retiro del Servicio Público, Cámara de Representantes, 2da Ses. Ord., 17ma Asam. Leg.

[13]Sonia I. Vélez Colón, Ponencia de la Oficina de Administración de los Tribunales, P. de la C. 1375 de 21 de octubre de 2013, Com. de Asuntos Laborales y Sistemas de Retiro del Servicio Público, Cámara de Representantes, 2da Ses. Ord., 17ma Asam. Leg., en la pág. 5.

[14]Íd., en las págs. 5-8.

[15]Íd., en la pág 8.

ello, consideramos pertinente resaltar que, en cuanto a la inclusión de "toda corporación pública", la OAT no mostró reparos. Adviértase que los señalamientos de la OAT fueron incluidos en el Informe Positivo de la Comisión, por lo que la Asamblea Legislativa estuvo advertida de los impactos significativos realizados.

Según adelantado, la controversia amerita tomar en consideración los efectos de la enmienda introducida por la Ley Núm. 206-2012, la cual excluyó a la Universidad de Puerto Rico de todas las disposiciones de la Ley de Relaciones del Trabajo para el Servicio Público; y, a su vez, armonizarla con la Ley Núm. 168-2014, la cual enmendó la definición de instrumentalidades corporativas de la Ley de Relaciones del Trabajo.

### III

De entrada, no se encuentra en disputa que la UPR ha sido reconocida legislativa y jurisprudencialmente como una corporación pública.[16] Así las cosas, hasta antes de la enmienda del 2014, la Ley de Relaciones del Trabajo consideraba como patronos a: (1) las empresas privadas y sus agentes; (2) **una lista expresamente enumerada** de instrumentalidades corporativas del gobierno, y (3) aquellas otras agencias del gobierno que se dedican al negocio

---

[16] A tales efectos, véanse, Art. 3.1 de la Ley de la Universidad de Puerto Rico, Ley Núm. 1 de 20 de enero de 1966, 18 LPRA sec. 602a; Cordero Jiménez v. UPR, 188 DPR 129, 146 (2013), y Sepúlveda v. UPR, 115 DPR 526, 527 (1984).

lucrativo o pecuniario. No obstante, ante la interacción de las referidas leyes, resulta claro que debe concurrir otro supuesto jurídico en todo caso junto con cualquiera de los incisos mencionados, a saber, que dicha entidad no esté cobijada por la Ley de Relaciones del Trabajo para el Servicio Público. Es decir, no podemos obviar la interacción entre ambas leyes para determinar en cuál, si alguna, una instrumentalidad corporativa o agencia es considerada un patrono para los efectos de cualesquiera de estas dos leyes.

De lo anterior se puede colegir que antes del 2014, la UPR no podía considerarse un patrono bajo la Ley de Relaciones del Trabajo, ya que no era una empresa privada, no estaba entre las instrumentalidades del gobierno expresamente enumeradas y tampoco era una agencia del gobierno que funcionaba como un negocio privado.

Ahora bien, en cuanto a la Ley de Relaciones del Trabajo para el Servicio Público, antes de la enmienda implementada por la Ley Núm. 206-2012, la UPR, sí se podía ubicar como un patrono por ser una "corporación pública que no funciona como negocio privado", uno de los supuestos mencionados anteriormente cobijados por la Ley. Nótese que, luego de la aprobación de la Ley Núm. 206-2012, se excluyó a la UPR de todas las disposiciones de la Ley de Relaciones del Trabajo para el Servicio Público. Por ende, a pesar de que la UPR es una corporación pública que no funciona como negocio privado,

con la enmienda del 2012, se eliminó la posibilidad de que esta se considerara como un patrono bajo la <u>Ley de Relaciones del Trabajo del Servicio Público</u>. Por consiguiente, pasemos a evaluar el próximo supuesto.

Mediante la Ley Núm. 168-2014 se enmendó la definición de instrumentalidades corporativas y, desde entonces, se consideran patronos sujetos a la <u>Ley de Relaciones del Trabajo</u> a: (1) toda corporación pública y sus subsidiarias; (2) toda instrumentalidad pública y sus subsidiarias; (3) las empresas similares que se establezcan en el futuro y sus subsidiarias, y (4) aquellas otras agencias del Gobierno que se dediquen a negocios lucrativos o pecuniarios. En observancia a la interacción reseñada, de igual modo, a cualquiera de estas cuatro instancias debe acompañarle el supuesto jurídico de que la <u>Ley de Relaciones del Trabajo para el Servicio Público</u> no considere a determinada instrumentalidad corporativa como patrono.

Así pues, bajo la definición vigente de instrumentalidades corporativas, la UPR se ubica dentro del primer supuesto jurídico por ser una corporación pública. No obstante, el solo hecho de que la UPR sea una corporación pública no es de por sí suficiente para establecer que esta es un patrono bajo la <u>Ley de Relaciones del Trabajo</u>. Adviértase que no basta con una interpretación literal, sino que debe buscarse un balance armonioso con la <u>Ley de Relaciones del</u>

Trabajo para el Servicio Público. Como expusimos, la UPR no se encuentra cobijada bajo esta última ley, ya que, precisamente con la Ley Núm. 206-2012, se excluyó a la UPR.

Siendo ello así, esta exclusión y la posterior enmienda a la definición de instrumentalidades corporativas, tuvo el efecto de que la UPR se considere una instrumentalidad corporativa y, por ende, un patrono bajo la Ley de Relaciones del Trabajo.

**IV**

Ahora bien, entiendo necesario destacar la visión adjudicativa que debemos aplicar en una controversia de esta naturaleza. El significado de la enmienda legislativa que hoy analizamos exige que no nos limitemos a una mera interpretación formalista y aislada de la enmienda, como se propone en la Parte IV de la Opinión Mayoritaria. La Opinión Mayoritaria sostiene que "cuando la ley es clara, no corresponde a los tribunales evaluar su sabiduría". Lo que ocurre es que pautar la interpretación aislada formulada por la mayoría, tendría un efecto dominó o reacción en cadena en otra legislación laboral, trastocando incluso el mandato legislativo en la aplicación de esta nueva jurisprudencia, para fines de determinar la aplicabilidad de otras entidades. Además, lo pautado tampoco encuentra base en los principios de hermenéutica que rigen nuestro ordenamiento jurídico aplicables a esta controversia. Reiteradamente, este Tribunal

ha enfatizado que todas las leyes, aunque sean claras, requieren de nuestra interpretación. Zayas Rodríguez v. PRTC, 195 DPR 720, 733 (2016); Mun. de San Sebastián v. QMC Telecom, 190 DPR 652, 668 (2014), e IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 739 (2012). Máxime cuando este Tribunal adoptó previamente el principio de hermenéutica que dispone que "al aplicar una ley siempre es necesario interpretarla. [. . .] Eso es así ya sean oscuras o claras las palabras de la ley, por lo que se puede decir que es falso afirmar que solo las leyes oscuras deben ser interpretadas". (Citas omitidas). IFCO Recycling v. Aut. Desp. Sólidos, supra, pág. 739.

Ciertamente, estos preceptos cobran aún más relevancia cuando, como en este caso, existe divergencia entre dos disposiciones que aparentan ser contradictorias entre sí. Este Tribunal tiene el deber de, antes de escoger una norma sobre la otra, darle un sentido lógico e intentar armonizarlas. Al respecto, hemos manifestado que, al ejercer nuestra función interpretativa, "tenemos que armonizar, siempre que sea posible, todos aquellos estatutos involucrados en la solución de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable". Íd., pág. 741 (cita omitida). Con ello, se intenta evitar contradicciones o tensiones que conduzcan a conclusiones o interpretaciones erróneas, salvo que resulte claro que, en efecto, ambas normas son incompatibles. Jorge Farinacci Fernós, Hermenéutica

Puertorriqueña: cánones de Interpretación Jurídica, Editorial

InterJuris 2019, pág. 42. Así lo hemos hecho correctamente en

diversas ocasiones en el contexto del derecho laboral. A modo

de ejemplo, en García Pagán v. Shiley Caribbean, 122 DPR 193,

202 (1988) expresamos al analizar diversas leyes laborales

que:

> Al tener toda esta legislación un mismo propósito,
> …, sus disposiciones se deben leer en
> forma armoniosa --R.E. Bernier y J.A. Cuevas
> Segarra, Aprobación e interpretación de las leyes
> en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S.,
> 1987, Vol. I, Cap. 73, pág. 481-- y así
> evitar interpretaciones que conduzcan a resultados
> irrazonables o absurdos, o que den lugar a
> distinciones que carezcan de fundamento
> racional. Véase Atiles, Admor. v. Comisión
> Industrial, 77 D.P.R. 16, 20 (1954).

Por esto, contrario a lo concluido por la Opinión

Mayoritaria, el verdadero significado del texto legislativo

requiere examinar la totalidad del Derecho Laboral,

específicamente las leyes de relaciones del trabajo. De lo

expuesto surge que, tanto la Ley de Relaciones del Trabajo

como la Ley de Relaciones del Trabajo para el Servicio Público

se complementan entre sí, por lo que no podemos partir de la

premisa general de que una corporación pública es un patrono

bajo la Ley de Relaciones del Trabajo por el hecho de que se

ubique bajo la definición de instrumentalidades corporativas,

como pauta la Opinión Mayoritaria. La controversia no es tan

sencilla como meramente determinar que toda corporación

pública está cobijada bajo la Ley de Relaciones del Trabajo

sin antes realizar una interpretación armoniosa, de manera que se eviten fricciones con la <u>Ley de Relaciones del Trabajo para el Servicio Público</u>.

Ante ese cuadro, concurro, aunque por fundamentos y una metodología adjudicativa distinta, que toda vez que la Ley Núm. 206-2012 excluyó a la UPR de todas las disposiciones de la <u>Ley de Relaciones del Trabajo para el Servicio Público</u>

y,posteriormente, la Ley Núm. 168-2014 enmendó la definición de instrumentalidades corporativas a los efectos de incluir a las corporaciones públicas, la UPR es un patrono bajo la <u>Ley de Relaciones del Trabajo</u>. Esta interpretación tiene el efecto de armonizar y sostener razonable y coherentemente el mandato legislativo contenido **en ambas leyes**.

**IV**

Por los fundamentos anteriormente expuestos, concurro respetuosamente con la determinación emitida por una Mayoría de este Tribunal.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universidad de Puerto Rico

     Peticionaria

       v.

                        AC-2016-0148

Unión Bonafide de Oficiales de
Seguridad de la Universidad de
Puerto Rico

     Recurrida


Opinión Disidente que emitió la Jueza Presidenta Oronoz Rodríguez


En San Juan, Puerto Rico, a 2 de febrero de 2021.

Nos correspondía resolver si la Universidad de Puerto Rico es un *patrono* para efectos de la Ley de Relaciones del Trabajo de Puerto Rico, <u>infra</u>. Para ello, debíamos interpretar la definición de *instrumentalidades corporativas* que contiene el Art. 2(11) de esa ley, según la enmendó la Ley Núm. 168 de 29 de septiembre de 2014. Una mayoría de este Tribunal se limitó a aplicar literalmente el texto de ese artículo y resolvió que la Universidad de Puerto Rico es un *patrono* para fines de la Ley de Relaciones del Trabajo de Puerto Rico. No puedo estar de acuerdo con el criterio mayoritario, pues se fundamenta en un análisis interpretativo simplista, incompleto y somero, hecho a espaldas de, y en abierta contravención

a, la intención legislativa. En lugar de realizar el ejercicio interpretativo riguroso que se exige de este Tribunal como máximo intérprete de las leyes, la Mayoría optó por descuidar su rol y adherirse ciegamente al texto legal, bajo el pretexto de que es claro. Eso constituye un análisis interpretativo incompleto. Aun si el texto legal aparentara ser claro de su faz, era indispensable realizar un análisis más profundo para comprobar que este comunicaba adecuadamente la intención legislativa verdadera. También era necesario para corroborar que su aplicación literal no generaba resultados no deseados por el legislador. La Mayoría parece olvidar que hemos sentenciado en múltiples ocasiones que aun las leyes más claras requieren interpretación.

Además, en casos como este, donde existe más de una legislación sobre la misma materia, las disposiciones de uno y otro estatuto se deben leer en conjunto y, de existir una contradicción aparente entre estas, nuestra obligación es armonizarlas. Esto tampoco se puede hacer con una lectura y aplicación mecánica del texto legal. Aquí, la enmienda que introdujo la Ley Núm. 168 de 29 de septiembre de 2014 generó una contradicción entre las disposiciones de la Ley de Relaciones del Trabajo de Puerto Rico y la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, infra, la cual debíamos aclarar.

Conforme a lo anterior, en este caso era indefectible consultar el historial legislativo de la Ley Núm. 168 de 29

de septiembre de 2014, y auscultar la intención del legislador. La Mayoría asevera que el historial guardó silencio sobre el motivo de la enmienda. Eso no es correcto. La realidad es que este revela con suma claridad que la enmienda fue una meramente técnica mediante la cual el legislador solo pretendió actualizar el lenguaje del estatuto sin modificar el alcance que la Ley de Relaciones del Trabajo de Puerto Rico tenía previo a la enmienda.

Al respecto, tanto de las interpretaciones de la Junta de Relaciones del Trabajo de Puerto Rico —las cuales merecen deferencia sustancial— como de las expresiones legislativas surge que históricamente la Ley de Relaciones del Trabajo de Puerto Rico se ha aplicado únicamente a las corporaciones públicas que operan como negocios privados o con fines lucrativos. Por lo tanto, se debió preservar ese alcance, por ser esa la intención legislativa. Así, correspondía analizar si la Universidad de Puerto Rico opera como una empresa privada o con fines de lucro. Fundamentos múltiples, entre ellos la naturaleza y el propósito de la Universidad de Puerto Rico, apuntan inequívocamente que esta, aunque es una corporación pública, no posee esas características. Ante ello, la UPR no se podía considerar una instrumentalidad corporativa ni, por consiguiente, un patrono al amparo de la Ley de Relaciones del Trabajo de Puerto Rico.

La Mayoría ignora todo lo anterior y produce un resultado erróneo al conferirle a la Ley de Relaciones del

Trabajo de Puerto Rico un alcance que el legislador no pretendió darle. Por lo tanto, ante ese ejercicio errado de la función interpretativa de este Foro, disiento.

I

El proceso de interpretación estatutaria "es uno de auscultar, averiguar, precisar, determinar, cuál ha sido la voluntad legislativa, o sea, qué es lo que ha querido decir el legislador". R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 241. Las reglas de hermenéutica legal asisten en la consecución de ese objetivo. R.E. Bernier y J.A. Cuevas Segarra, op. cit., pág. 241. Así, el Art. 14 del Código Civil de 1930 (derogado), 31 LPRA sec. 14, -vigente al momento de los hechos que nos conciernen- disponía que cuando el texto de una ley es claro y libre de ambigüedad, este no se debe menospreciar bajo el pretexto de cumplir su espíritu. No obstante, lo anterior no significaba que, ante la aparente claridad de la ley, el análisis interpretativo debía culminar ahí. Tampoco implicaba un adhesión ciega y automática al texto legal.

Primeramente, hemos establecido que "todas las leyes, aún las *"clarísimas"*, requieren interpretación". Pueblo v. Zayas Rodríguez, 147 DPR 530, 538 (1999). (Comillas internas y énfasis en el original). Esto es así, ya que, "[a] diferencia del lenguaje que utilizamos en el contexto social o cotidiano, el lenguaje jurídico requiere más que

una simple interpretación puramente comunicativa. Y es que este tipo de lenguaje no tiene únicamente significado semántico, sino efectos legales". Jorge Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, Editorial InterJuris 2019, pág. 6. Así, una buena metodología interpretativa requiere analizar la ley

> tomando en consideración los fines que persigue y en forma tal que se ajuste a su fin esencial y a la política pública que la inspira. ... En el proceso de encontrar el significado de la ley, el intérprete no puede actuar en desconocimiento de la consecuencia que conlleva la interpretación y debe darle aquélla que logre los propósitos del legislador". Pueblo v. Martínez Rivera, 144 DPR 631, 648 (1997) (citando a E. Bernier y J.A. Cuevas Segarra, op. cit., pág. 269).

Por eso, "[e]n el proceso de indagar la intención del legislador es necesario examinar el historial legislativo". Pueblo v. Zayas, supra, pág. 539.

Además, resulta indispensable realizar un ejercicio interpretativo abarcador pues "a veces la letra de la ley meramente «aparenta» ser clara cuando, en verdad, no lo es". Farinacci Fernós, op. cit., pág. 73. Analizar el historial legislativo permite identificar una insuficiencia comunicativa en un texto que meramente aparenta ser claro. Íd., págs. 170, 171 y 184. La existencia de una tensión entre la intención legislativa y el contenido comunicativo de una disposición "genera una presunción de que lo que verdaderamente existe es un problema con el texto de la ley". Íd., pág. 184. Ante esa circunstancia, el Art. 14 del Código Civil de 1930, supra, se tornaría inoperante.

Así, la interpretación que se adopte deberá ser una que haga valer la intención legislativa verdadera.

En segundo lugar, hemos dicho que las leyes no se pueden interpretar "sólo mediante la aplicación mecánica de los […] cánones de interpretación". Banco de Ponce v. Srio. Hacienda, 81 DPR 442, 449 (1959). Las reglas de hermenéutica **son meras guías** en el proceso de interpretar las leyes y descubrir cuál fue la intención del legislador. R.E. Bernier y J.A. Cuevas Segarra, op. cit., pág. 241; véase, además, IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 738 (2012). Por consiguiente, deben ceder cuando su aplicación conlleve un resultado contrario a la intención legislativa. Véase Pueblo v. Rodríguez, 50 DPR 36 (1936). Además, no se pueden utilizar

> como sustituto de lo que debe ser la genuina función de los jueces en la interpretación de las leyes: el examen paciente y riguroso que parte de la letra de la ley y evalúa todos los elementos de juicio disponibles para así descubrir el verdadero significado y propósito de la disposición legal. Íd., pág. 450.

Por otra parte, se sabe que "[l]as diversas leyes relacionadas entre sí por su objetivo y propósito, no deben ser interpretadas separadamente, sino refiriéndose las unas a las otras como un todo, **buscando la intención legislativa**. En otras palabras, […] deben ser tratadas como un todo armónico, leyéndolas en conjunto y no interpretando aisladamente sus disposiciones". Íd., pág. 481. (Énfasis suplido). Véase Art. 18 del Código Civil de 1930 (derogado), 31 LPRA sec. 18. En atención a lo anterior,

"cuando existe un conflicto [real o aparente] entre dos estatutos sobre la misma materia, los tribunales se deben esforzar por armonizar las dos disposiciones". Íd., pág. 319. Esto, "con miras a lograr un resultado sensato, lógico y razonable **que represente la intención del legislador**". Andino v. Fajardo Sugar Co., 82 DPR 85, 94 (1961). (Énfasis suplido) (Nota interna omitida).

Finalmente, debemos recordar "que la interpretación de la agencia encargada de la administración de un estatuto merece deferencia sustancial". De Jesús v. Depto. Servicios Sociales, 123 DPR 407, 417-418 (1989). Esa interpretación no tiene que ser la única razonable; basta que sea razonable y compatible con el propósito legislativo. Aponte v. Alcalde de San Lorenzo, 146 DPR 675, 688 (1998). Además, las decisiones de las agencias administrativas también merecen deferencia dado su peritaje en las materias que la ley les delegó. Torres Santiago v. Depto. de Justicia, 181 DPR 969, 1002 (2011). Solo se podrán revocar "cuando sean irrazonables, arbitrarias o ilegales". Íd.

## II

En Puerto Rico, el régimen de la contratación obrero-patronal en el sector público tiene dos dimensiones: una constitucional y otra estatutaria. Para entenderlo y resolver la controversia de este caso, era menester analizar de manera ponderada y armonizada ambas dimensiones, las cuales están íntimamente relacionadas.

Como veremos, nuestro ordenamiento dividió este régimen en dos grupos de empleados.

**A. Artículo II, Secciones 17 y 18 de la Constitución del Estado Libre Asociado de Puerto Rico**

La Sección 17 de la Carta de Derechos de nuestra Constitución garantizó a los empleados de negocios y patronos privados, así como a algunos empleados públicos los derechos a organizarse y a negociar colectivamente. Art. II, Sec. 17, Const. ELA, LPRA, Tomo 1, ed. 2016, págs. 388-389. Particularmente, estos derechos se hicieron extensivos a **los trabajadores de agencias o instrumentalidades del Gobierno que funcionen como empresas o negocios privados.** Íd. Además, para asegurar y llevar a efecto esos derechos, la Sección 18 de nuestra Carta de Derechos le otorgó a ese mismo grupo de empleados "en sus relaciones directas con sus propios patronos, el derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales". Art. II, Sec. 18, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 391; véase R.W. Markus, La negociación colectiva en las corporaciones públicas y el Fondo del Seguro del Estado, 1974, pág. 4. En cuanto a los demás empleados públicos no cubiertos por las Secciones 17 y 18, "[l]a Convención creyó prudente dejar en manos de la Legislatura el tratamiento que habría de d[á]rse[les]". J.R.T. v. Asoc. Servs. Médicos Hosp., 115 DPR 360, 365 (1984) (citando a J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982, T. III, pág.

206)); A.A.A. v. Unión Empleados A.A.A., 105 DPR 437, 447 (1976).[17]

El *Informe de Comisión de la Carta de Derechos* ilustra el razonamiento que subyace esa diferenciación. Allí se explicó que, en el caso de los empleados excluidos, "el empleo es incidental al servicio, constituyendo este último una responsabilidad indeclinable para con la ciudadanía". 4 Diario de Sesiones de la Convención Constituyente 2575 (1951). El informe advirtió que la interrupción de los servicios públicos que caían fuera de los supuestos de lucro suponía "una parálisis *pro tanto* en las responsabilidades del gobierno". Íd. Se estimó que la Constitución no podía "instituir el contrasentido de garantizar a una reducidísima minoría el derecho a suspender la ejecución de las leyes". Íd. En fin, el informe concluyó que "[l]os sueldos y las condiciones de trabajo de los empleados públicos están gobernados por leyes y no por convenio". Íd.

Así, por imperativo constitucional, "el ordenamiento jurídico de Puerto Rico divide al sector público, para propósitos de negociación colectiva, en dos (2) grupos". J.R.T. v. Corp. del Conserv. Música P.R., 140 DPR 407, 428 (1996). Por un lado, se encuentran "los empleados públicos

---

[17] Véase D. Fernández, La Junta de Relaciones del Trabajo de Puerto Rico y el sector público, 43 Rev. Jur. UPR 295, 316 (1974) ("La clara delimitación que sobre estas garantías hacen tanto la Ley de Relaciones del Trabajo como los llamados derechos económicos de la Constitución excluyen, por tanto, las instrumentalidades corporativas del gobierno que funcionan u operan como negocios públicos, las ramas ejecutiva, legislativa y judicial del Gobierno de Puerto Rico y los Gobiernos Municipales".).

a los cuales se les reconoce un derecho *constitucional* a negociar colectivamente en iguales condiciones que a los del sector privado por su similaridad con [e]stos". Íd., págs. 428-429. Y, por otra parte, están "aquellos empleados públicos que, por su similaridad a los que tienen cargos en el servicio gubernamental regular, están excluidos de dicha protección constitucional y no les es reconocida la capacidad de reclamarla". Íd., pág. 429; véase J.R.T. v. Asoc. Servs. Médicos Hosp., supra, pág. 365. En fin, tal y como ha resuelto este Tribunal, "las disposiciones estatutarias relativas a estos derechos deben aplicarse a tenor con la directriz constitucional". J.R.T. v. Asociación Condominio Playa Azul I, 117 DPR 20, 30 (1986); J.R.T. v. Asoc. Servs. Médicos Hosp., supra, pág. 365.

**B. Ley de Relaciones del Trabajo de Puerto Rico**

Según expuesto, los derechos de los trabajadores a organizarse, negociar y llevar a cabo otras actividades concertadas son de rango constitucional; sin embargo, tuvieron su origen en la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 LPRA sec. 31 et seq., (Ley de Relaciones del Trabajo). Este estatuto antecedió nuestra Constitución y fue la génesis de la legislación laboral puertorriqueña. C. Zeno Santiago y V.M. Bermúdez Pérez, *Tratado de Derecho del Trabajo*, San Juan, Pubs. JTS, T. I, 2003, pág. 33; A.A.A. v. Unión Empleados A.A.A., supra, pág. 448 ("[L]a semántica de la

Sec. 18 deriva de [la Ley de Relaciones del Trabajo de Puerto Rico]").

Ahora bien, al igual que las Secciones 17 y 18 de la Carta de Derechos de nuestra Constitución, la Ley de Relaciones del Trabajo no le aplica a todo empleado ni a todo patrono en Puerto Rico. En lo pertinente, el Art. 2 de la Ley dispone que ese término "no incluirá **excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen**, al Gobierno ni a ninguna subdivisión política del mismo". 29 LPRA sec. 63(2). (Énfasis suplido). Así, en el caso de los empleados públicos, el término patrono no incluye al Gobierno ni a ninguna de sus subdivisiones políticas, salvo las instrumentalidades corporativas, según la ley las define.[18] Por lo tanto, debemos recurrir a la definición de *instrumentalidades corporativas*, la cual ha sido objeto de varias enmiendas desde su adopción.

Originalmente esa definición, leía como sigue:

> El término "instrumentalidades corporativas" **se refiere a las corporaciones que posean bienes y que pertenezcan al Gobierno de Puerto Rico o estén bajo su inmediata dirección, incluyendo** la Autoridad de Tierras, la Compañía Industrial, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, el Servicio de Riego de Isabela, la Autoridad de Transporte, la Autoridad de Comunicaciones, el Servicio de Acueductos y Alcantarillados, las empresas similares que se establezcan en el futuro y todas las subsidiarias de empresas de servicio público.

---

[18] La Ley de Relaciones del Trabajo de Puerto Rico "concedió, por vez primera en esta jurisdicción, el derecho a la negociación colectiva a ciertos empleados públicos, esto es, a los empleados de las instrumentalidades corporativas". R.W. Markus, op. cit., pág. 8.

Art. 12(13) de la Ley Núm. 130 de 8 de mayo de 1945, 1945 Leyes de Puerto Rico 413 (énfasis suplido).

Según esta definición, el término se refería a las corporaciones

que poseían bienes y que: (1) pertenecían al Gobierno de Puerto Rico; o (2) estaban bajo su control inmediato. A tono con esto, el legislador mencionó nueve (9) corporaciones públicas en particular. Además, incluyó en la definición a toda empresa similar establecida posteriormente y toda subsidiaria de empresas de servicio público.[19]

Posteriormente, la Ley Núm. 6 de 7 de mayo de 1946 (Ley Núm. 6-1946) modificó la definición de *instrumentalidades corporativas* para que leyera de la manera siguiente:

El término "instrumentalidades corporativas" significa las siguientes corporaciones que poseen bienes pertenecientes a, o que están controladas por, el Gobierno de

---

[19] Cabe destacar que la inclusión de ciertas instrumentalidades corporativas del Gobierno en la Ley de Relaciones del Trabajo en ese momento ocurrió en respuesta al surgimiento de la organización corporativa como un instrumento gubernamental efectivo. R.W. Markus, op. cit., pág. 10. Cuando el gobierno comenzó a adquirir utilidades públicas para administrarlas, casi todas esas empresas de servicio público negociaban condiciones de empleo. Íd. En consecuencia, "el legislador reaccionó simplemente plasmando en la ley esa realidad que apreciaba, haciendo una enumeración de aparentemente todas las instrumentalidades del gobierno donde existía la negociación". Íd., pág. 11. La inclusión *per se* de ciertas instrumentalidades corporativas del Gobierno en nuestra Ley fue caracterizada como un elemento significativo y único. F. Barela, The Puerto Rico Labor Relations Act: A State Labor Policy and Its Application, 1962, pág. 63. La inclusión fue significativa debido a la gran cantidad de empleados públicos que laboraban en esas instrumentalidades corporativas. Íd., págs. 63-64. Además, fue única porque, en aquel momento, "ninguna otra ley de relaciones del trabajo incluía a empleados gubernamentales de clase alguna dentro de su cobertura". Íd., pág. 64 (traducción suplida).

> Puerto Rico: La Autoridad de Tierras, la
> Compañía Agrícola, el Banco de Fomento, la
> Autoridad de Fuentes Fluviales, la Compañía de
> Fomento de Puerto Rico (Compañía de Fomento
> Industrial), la Autoridad de Transporte, la
> Autoridad de Comunicaciones, y las subsidiarias
> de tales corporaciones, e incluirá también las
> empresas similares que se establezcan en el
> futuro y sus subsidiarias, y aquellas otras
> agencias del Gobierno que se dedican o puedan
> dedicarse en el futuro a negocios lucrativos o
> a actividades que tengan por objeto un
> beneficio pecuniario. Art. 2(11) de la Ley Núm.
> 6-1946, 1946 Leyes de Puerto Rico 25.

Con esta enmienda, permaneció básicamente inalterada la primera parte de la definición. Sin embargo, el legislador modificó la lista de corporaciones eliminando unas y añadiendo otras. Además, se dejó la referencia a toda empresa similar que se estableciera en el futuro y sus subsidiarias. Por último, se eliminó la cláusula referente a "todas las subsidiarias de empresas de servicio público", pero se insertó la cláusula siguiente: "y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario". Art. 2(11) de la Ley Núm. 6-1946, supra. La incorporación de esta cláusula resultó ser "su más importante disposición", puesto que "ha servido de base para la mayoría de los casos donde la Junta ha considerado el issue de **si una corporación es patrono**". R.W. Markus, op. cit., pág. 9 (énfasis suplido).

**C. Enmienda de la Ley Núm. 168-2014**

Finalmente, la Ley Núm. 168 de 29 de septiembre de 2014 (Ley Núm. 168-2014) volvió a enmendar la definición de

*instrumentalidades corporativas* de la Ley de Relaciones del

Trabajo, así como otros artículos de la ley. Un examen del

historial legislativo de la Ley Núm. 168-2014 revela que su

propósito fue atemperar la Ley de Relaciones del Trabajo a

la Ley de la Judicatura del Estado Libre Asociado de Puerto

Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24 <u>et seq.</u>, y

realizar otra serie de enmiendas técnicas. La intención

legislativa surge claramente de su Exposición de Motivos, e

indica:

> "[E]sta Asamblea Legislativa estima necesario realizar varias enmiendas a la "Ley de Relaciones del Trabajo", a los fines de aclarar la jurisdicción respecto a la intervención de la Rama Judicial en los quehaceres de la Junta, para modernizar o liberalizar el proceso de notificación de órdenes interlocutorias y determinaciones finales, así como **otros cambios de carácter técnico**. (Énfasis suplido).

Mediante la enmienda al Art. 2(11), se sustituyó la lista

de corporaciones públicas por el término: "toda corporación

o instrumentalidad pública". El resto de la definición se

mantuvo inalterada. La Asamblea Legislativa caracterizó

esta enmienda como una de las **"enmiendas técnicas"** de la

ley y explicó que las corporaciones a las que se hacía

referencia, "en la actualidad **no existen u operan bajo un**

**nombre distinto. En atención a ello**, se incluy[ó] el

término 'toda corporación o toda instrumentalidad

pública'".[20] La definición vigente lee como sigue:

---

[20] P. de la C. 1375 de 9 de septiembre de 2013, 4ta Sesión Ordinaria, 17ma Asamblea Legislativa, Informe Positivo de la Comisión de Relaciones Laborales, Asuntos del Consumidor y Creación de Empleos del Senado, pág. 8 (énfasis suplido); P. de la C. 1375 de 9 de septiembre de 2013, 2da Sesión Ordinaria, 17ma Asamblea Legislativa, Informe

Significa toda corporación o instrumentalidad pública y sus subsidiarias, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o pueden dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. Art. 2(11) de la Ley de Relaciones del Trabajo, 29 LPRA sec. 63(11).

## D. Interpretación de la Junta de la definición de *instrumentalidades corporativas*

En ocasiones múltiples, la Junta de Relaciones del Trabajo de Puerto Rico (Junta) ha interpretado el término *instrumentalidades corporativas* para determinar si una corporación pública es un patrono para los efectos de la Ley de Relaciones del Trabajo.

En Administración de Servicios Agrícolas, Dec. 486 (JRTPR 1968), se alegaba que la Administración de Servicios Agrícolas (Administración) no era patrono. La Junta señaló que la Administración no estaba entre las corporaciones públicas que la ley mencionaba; no era una subsidiaria de estas ni tampoco de naturaleza similar, por no seguir el patrón comercial de una empresa privada; y no operaba con fines lucrativos. Íd., págs. 420 y 421. Razonó que "el propio estatuto creador […] señala que el propósito de dicha administración es propender al fomento y desarrollo de la agricultura". Íd., pág. 421. Además, a la Administración le estaba vedada "la explotación de los recursos agrícolas para fines comerciales". Íd., pág. 420.

---

Positivo de la Comisión de Asuntos Laborales y Sistemas de Retiro del Servicio Público de la Cámara de Representantes, pág. 5 (énfasis suplido).

Así, se ceñía más al tipo de agencia gubernamental que se limita esencialmente a la prestación de servicios. Íd. Por lo tanto, la Administración "no e[ra] patrono en el significado de ese concepto bajo nuestra Ley de Relaciones del Trabajo". Íd., pág. 421.

Un año después, se alegó que la Corporación de Renovación Urbana y Vivienda de Puerto Rico (CRUV) era un patrono al amparo de la Ley de Relaciones del Trabajo. Corporación de Renovación Urbana y Vivienda de Puerto Rico, Dec. 542 (JRTPR 1969). Se adujo que la CRUV era una instrumentalidad corporativa al amparo de la ley porque tenía un propósito lucrativo o pecuniario. Íd., pág. 301. Al igual que en el caso anterior, la Junta determinó que la CRUV no estaba incluida entre las corporaciones públicas que la ley señalaba, que tampoco era una subsidiaria de estas ni era de naturaleza similar, y que no se podía considerar como "una empresa que se dedica o pueda dedicarse en lo futuro a negocios lucrativos o a actividades que tenga por objeto un beneficio pecuniario" Íd., págs. 304-305. La Junta concluyó que "[n]o concebía una entidad privada que rinda los servicios que da la CRUV; como tampoco [concebía] a la CRUV operando en forma comparable a una entidad privada" y que "[l]a misión social que el Estado le encomend[ó] a la CRUV, [era] evidente que no [podía] ser cumplida por la empresa privada". Íd., pág. 306. Por lo tanto, concluyó que como la CRUV no era una corporación pública que operaba como una empresa privada o

con fines de lucro, no era un patrono al amparo de la Ley de Relaciones del Trabajo.

Por otra parte, en Corporación de Servicios Médicos Universitarios, Dec. 1455 (JRTPR 2012), la Junta tuvo que resolver si la Corporación de Servicios Médicos Universitarios h/n/c Hospital de la Universidad de Puerto Rico (CSMU) era una instrumentalidad corporativa al amparo de la Ley de Relaciones del Trabajo. Nuevamente, el análisis de la Junta se centró en determinar si la CSMU operaba como una empresa privada o se dedicaba a negocios con fines de lucro o que tuvieran por objeto un beneficio pecuniario. Íd., pág. 9. La Junta notó que se encontraba ante:

> [U]na instrumentalidad del Gobierno de Puerto Rico creada por la Legislatura mediante la Ley 112 al autorizar a la Junta de Síndicos de la UPR a "establecer una corporación sin fines de lucro para operar un hospital de la Universidad de Puerto Rico adscrito al Recinto de Ciencias Médicas, que será la principal institución de enseñanza médica de la Universidad". Íd., págs. 11-12.

Además, citando la Opinión del Secretario de Justicia Núm. 7 de 1993,[21] la Junta concluyó que **"una 'instrumentalidad corporativa' es toda aquella que se dedique a negocios lucrativos o actividades que produzcan beneficio pecuniario"**. (Énfasis suplido). A esos efectos,

---

[21] En esa Opinión se consideró "que los empleados del Hospital Pediátrico no tienen derecho a la negociación colectiva de convenios laborales, ni tienen derecho a la huelga y otras actividades gremiales". Op. Sec. Just. Núm. 7 de 1993.

determinó que la CSMU era un componente esencial de la Universidad de Puerto Rico (UPR), adscrita al Recinto de Ciencias Médicas y controlada totalmente por la UPR; y que no operaba como un negocio lucrativo. Íd., pág. 15. Por tanto, al no operar como una empresa privada o con fines de lucro, la CSMU no era una instrumentalidad corporativa al amparo de la Ley de Relaciones del Trabajo. Íd.

Lo anterior ilustra que la Junta ha interpretado que una corporación pública no se debe considerar automáticamente como una *instrumentalidad corporativa.* Por el contrario, solo lo es aquella que opera como una empresa privada o se dedica a negocios lucrativos o a actividades que produzcan un beneficio pecuniario.

**E. Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico**

Por último, luego de la adopción de la Ley de Relaciones del Trabajo, se aprobó la Ley Núm. 45 de 25 de febrero de 1998, conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, 3 LPRA sec. 1451 et seq. (Ley Núm. 45-1998). En la Exposición de Motivos de la Ley Núm. 45-1998, se explicó que la Ley de Relaciones del Trabajo "concedió el derecho a organizar sindicatos y a negociar colectivamente a los trabajadores de las instrumentalidades corporativas del gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario". Como vemos, esto es compatible con

el estándar que la Junta ha adoptado para determinar qué es una instrumentalidad corporativa bajo la Ley de Relaciones del Trabajo. Asimismo, la Legislatura expresó que

> **La Constitución, al igual que la [Ley de Relaciones del Trabajo][…] guardaron silencio en cuanto a los empleados de las agencias del gobierno central,** absteniéndose igualmente de formular prohibición expresa o tácita que impidiera la eventual concesión de similares garantías a este importante sector de nuestra fuerza laboral.
> […]
> Para corregir esa situación se adopta la presente Ley. **Su propósito es conferirle a los empleados públicos en las agencias tradicionales del gobierno central, a quienes no aplica la Ley de Relaciones del Trabajo de Puerto Rico, el derecho a organizarse para negociar sus condiciones de trabajo dentro de los parámetros que se establecen en esta Ley.** (Énfasis suplido). Exposición de Motivos de la Ley Núm. 45-1998.

De lo anterior surge claramente que mediante la Ley Núm. 45-1998 se pretendió extender ciertos derechos laborales a los trabajadores del Gobierno que no estaban cobijados por la Constitución o la Ley de Relaciones del Trabajo. En ese sentido, la Ley Núm. 45-1998 y la Ley de Relaciones del Trabajo se complementan, pues cada una regula los derechos de un grupo de trabajadores a organizarse y negociar colectivamente.

Así, destaco que la Ley Núm. 45-1998 incluye en su definición de *agencia* a las "corporaciones públicas que **no funcionen como negocios privados**". Art. 3(b) de la Ley Núm. 45-1998, 3 LPRA sec. 1451a(b). (Énfasis suplido). Las agencias, según estas se definen en el estatuto,

constituyen los patronos a los que la Ley Núm. 45-1998 les aplica. Art. 3(x) de la Ley Núm. 45-1998, 3 LPRA sec. 1451a(X). Es medular señalar, además, que la Ley Núm. 45-1998 excluyó expresamente de su aplicación a los empleados de la Universidad de Puerto Rico. Sec. 4.2(c) de la Ley Núm. 45-1998, 3 LPRA sec. 1451d(c).

III

La Mayoría resolvió que la Ley Núm. 168-2014 tuvo el efecto de incluir a todas las corporaciones o instrumentalidades públicas en la definición de *instrumentalidades corporativas* de la Ley de Relaciones del Trabajo y, por lo tanto, de convertirlas en un patrono para efectos de esa ley. Razonó, entonces, que la UPR es una instrumentalidad corporativa al amparo del estatuto por el mero hecho de ser una corporación pública. Esto, porque el Art. 3.1 de la Ley de la Universidad de Puerto Rico, 18 LPRA sec. 602a, dispone que la UPR tendrá "responsabilidades y funciones propias de una entidad corporativa". Así, concluyó que la UPR es un patrono a los efectos de la Ley de Relaciones del Trabajo.

La determinación de la Mayoría constituye una interpretación equivocada de la Ley de Relaciones del Trabajo, que contraviene la intención del legislador al aprobar la Ley Núm. 168-2014, so pretexto de la claridad de la ley. Aquí no procedía realizar un análisis interpretativo limitado a aplicar literalmente el texto del Art. 2(11) de la Ley de Relaciones del Trabajo, supra. Como

indicamos al comienzo, este Foro no puede reducir su ejercicio interpretativo a un análisis y aplicación simplistas del texto de la ley. Ello equivale a claudicar la función interpretativa de este Tribunal o, cuando menos, constituye un ejercicio irresponsable de esa función. Cumplir con nuestra encomienda implica determinar los efectos jurídicos de una disposición legal en un contexto particular, conforme al propósito y a la intención del legislador al adoptarla. Así, aun ante un texto que aparente ser claro, el cumplimiento cabal de nuestra obligación al interpretar las leyes -identificar y hacer valer la intención legislativa- nos exige examinar el historial legislativo de los estatutos involucrados.[22] Ese examen podría revelar que el texto de la ley realmente no es claro, que no refleja fielmente la intención legislativa o que se cometió un error o inadvertencia al adoptarlo. Hacer ese análisis no nos convierte en creadores ni inventores de los estatutos, lo cual ciertamente no nos corresponde, sino en intérpretes de la ley y no meros lectores de esta.

Por lo tanto, aquí era obligatorio analizar detenidamente el historial legislativo de la Ley Núm. 168-2014 para comprobar si su texto era compatible con la intención legislativa al aprobar esa ley. A poco que se hiciera este ejercicio, se descubriría que, al enmendar la

---

[22] "A fin de cuentas, nadie puede comprender e interpretar la significación de cualquier legislación con la mera lectura de su texto…". Orsini García v. Srio. de Hacienda, 177 DPR 596, 612 (2009).

definición de *instrumentalidades corporativas*, la Legislatura **únicamente** quiso atemperar el lenguaje de la ley con la realidad jurídica, pues había un desfase entre ambas. **Así surge diáfanamente del historial legislativo** de la Ley Núm. 168-2014. No obstante, la Mayoría afirma que ese historial guardó silencio sobre el motivo de la enmienda.[23] Nada más lejos de la verdad.

En los informes de las comisiones de ambos cuerpos legislativos se explicó claramente que algunas de las corporaciones que la Ley de Relaciones del Trabajo mencionaba dejaron de existir y a otras se les modificó el nombre. En atención a ello, en vez de optar por actualizar la lista de corporaciones, lo cual con toda probabilidad se hubiese tenido que hacer nuevamente en el futuro, el legislador decidió sustituirla por "toda corporación o instrumentalidad pública". La Legislatura caracterizó esta enmienda como una **técnica**. Esto implica que la enmienda en controversia no modificó el alcance que la Ley de Relaciones del Trabajo tenía antes de que la Ley Núm. 168-2014 la enmendara.

Sobre esto, las decisiones de la Junta —entidad que administra la Ley de Relaciones del Trabajo y que tiene el *expertise* en este tema— revelan que el alcance que históricamente se le ha conferido a la Ley de Relaciones del Trabajo es que aplica únicamente a las corporaciones públicas que se dedican o puedan dedicarse en el futuro a

---

[23] Opinión Mayoritaria, pág. 10.

negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. Aunque las decisiones preceden la enmienda que la Ley Núm. 168-2014 introdujo, ante el carácter técnico de esa enmienda, su vigencia permanece intacta. Así, de ellas se puede colegir que toda corporación pública que se ha considerado una instrumentalidad corporativa al amparo de la Ley de Relaciones del Trabajo operaba como una empresa privada o con fines de lucro.[24]

Ese alcance también lo evidencia el texto, propósito e historial legislativo de la Ley Núm. 45-1998. Por un lado, al aprobar esa ley, el legislador indicó claramente que la Ley de Relaciones del Trabajo "concedió el derecho a organizar sindicatos y a negociar colectivamente a los trabajadores **de las instrumentalidades corporativas del gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario**". Exposición de Motivos de la Ley Núm. 45-1998. (Énfasis suplido). Por otro lado, la Ley Núm. 45-1998 se aprobó para regular los derechos de los empleados públicos que la Ley de Relaciones del Trabajo no cobijaba y, a esos efectos, incluyó como patrono a las corporaciones públicas que **no operen como negocios privados**. Toda vez que la Ley Núm. 45-1998 y la Ley de

---

[24] Por el contrario, aquellas corporaciones públicas que no operaban u operan como un negocio lucrativo, a saber, la Administración de Servicios Agrícolas, la CRUV y el Hospital de la UPR, entre otros, no se han considerado como instrumentalidades corporativas para fines de la Ley de Relaciones del Trabajo.

Relaciones del Trabajo se complementan, esto confirma que esta última por décadas se ha extendido únicamente a las corporaciones públicas que **operen como negocios privados.**

Por lo tanto, esto demuestra que existe una tensión evidente entre el contenido comunicativo del texto de la ley y el propósito y objetivo de la enmienda. Aunque la Ley Núm. 168-2014 enmendó el texto legal para que diga que la Ley de Relaciones del Trabajo aplica a "toda corporación o instrumentalidad pública", la intención verdadera del legislador era que continuara aplicando a un grupo limitado de corporaciones públicas. En otras palabras, el lenguaje del estatuto meramente aparenta ser claro, cuando realmente no lo es.[25] Esto, pues en realidad no transmite con claridad la intención legislativa. Ante ello, no se debió adoptar una interpretación literal del estatuto, so pretexto de que el Art. 14 del Código Civil de 1930, <u>supra</u>, obligaba a ese curso de acción. Ante la falta de claridad

---

[25] Incluso se podría argumentar que la falta de claridad surge de la faz del estatuto. Según se puede apreciar de la definición de *instrumentalidades corporativas*, esta menciona los diferentes tipos de entidades que caen bajo ese término. El último componente de la lista es: "aquellas **otras** agencias del gobierno **que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario**". Art. 2(11) de la Ley de Relaciones del Trabajo, 29 LPRA sec. 63(11). (Énfasis suplido). Como se puede ver, el último componente de la lista está acompañado de una caracterización o calificativo. Además, antes de ese calificativo se utiliza el determinante "otras". Ese determinante sugiere que las entidades que anteceden al último componente comparten esa misma caracterización, pues de lo contrario el determinante sería inconsecuente. Esto implica que existe una ambigüedad en la definición de *instrumentalidades corporativas*. Por un lado, el final de la definición parece sugerir que ese término abarcara únicamente a las entidades públicas que se dedican a negocios lucrativos o a actividades con fines pecuniarios. Por otro lado, el comienzo de la definición aparenta señalar que el término incluye todas las corporaciones públicas. Ambas cosas son incompatibles, pues como es sabido, no todas las corporaciones públicas operan con fines lucrativos o se dedican a actividades que tengan por objeto un beneficio pecuniario.

del texto de la ley, ese artículo no exigía adherirse al texto legal.[26]

A pesar de lo anterior, la Mayoría insiste en apegarse ciega y exclusivamente al texto de la ley mediante el argumento de que "[e]s simplemente incompatible con un gobierno democrático determinar el significado de una ley basándonos en lo que nos parece que el legislador quiso decir, en lugar de por lo que el legislador en efecto promulgó". Opinión, pág. 13. Sin embargo, no hay nada más antidemocrático que adoptar, mediante una aplicación mecánica del texto legal, una interpretación que indudablemente contraviene la intención de la legislatura. Esto es así, pues en un estado constitucional de derecho, a la ciudadanía la gobiernan actos deliberados. Farinacci Fernós, op. cit., pág. 182. "Por tanto, una medida legislativa que es contraria al deseo de su autor carece de legitimidad democrática, pues seríamos gobernados por un error, en vez de por un acto deliberado. Un texto que nadie quiso no es válido". Íd. Por consiguiente, en esas circunstancias, para salvaguardar la validez del texto, es necesario armonizarlo con la intención legislativa. En conformidad con ese principio, aquí la única interpretación que podía prevalecer es que, tras la enmienda de la Ley

---

[26] "Si bien, de ordinario, el legislador es responsable por el texto que adopta, este no aplicará de manera que genere resultados que no desea". Farinacci Fernós, op. cit., pág. 34. Por eso hemos dicho que la intención del legislador debe prevalecer "sobre la disposición literal del estatuto que esté en conflicto con esa intención". Srio. del Trabajo, etc. v. P.R. Cereal Extracts, Inc., 83 DPR 267, 276 (1961).

Núm. 168-2104, el criterio rector para determinar si una corporación o instrumentalidad pública es una *instrumentalidad corporativa* para efectos de la Ley de Relaciones del Trabajo continuó siendo si esta opera como una empresa privada o con fines lucrativos o se dedica a actividades que tengan como objeto un beneficio pecuniario.

Existe un argumento adicional que sustenta esa interpretación. Según vimos, la Ley Núm. 45-1998 y la Ley de Relaciones del Trabajo están interrelacionadas, por lo cual debemos interpretarlas de forma armoniosa. En este caso, la aprobación de la Ley Núm. 168-2014 generó una contradicción aparente entre ambos estatutos. Mientras la Ley Núm. 45-1998 indica que esta aplica a algunas corporaciones públicas —a saber, aquellas que **no** operen como empresas privadas— el texto de la Ley de Relaciones del Trabajo, luego de la última enmienda, parece sugerir que esa legislación incluye **todas** las corporaciones públicas. Por lo tanto, este Tribunal tenía que armonizar ambas leyes a la luz de la intención verdadera de la Asamblea Legislativa. El cumplimiento de esa obligación hubiese llevado a la misma conclusión que expusimos anteriormente, pues la armonía entre las leyes se lograba al hacer valer lo que quiso el legislador al aprobar la Ley Núm. 168-2014: preservar el alcance que ambos estatutos tenían **antes** de la enmienda en controversia. No había espacio para otra interpretación.

Ante esa realidad, no se podía aplicar la regla de hermenéutica que establece que toda duda sobre la aplicación de un estatuto laboral se debe resolver liberalmente a favor del empleado. La liberalidad en la interpretación no puede conducirnos a violentar la intención legislativa. Rivera Coll v. Tribunal Superior, 103 DPR 325, 331 (1975). Aquí, si bien el texto de la ley no es claro, la intención legislativa lo es. Como tal, prevalece sobre cualquier regla de hermenéutica que conlleve un resultado que la contradiga.

Finalmente, cabe destacar que el texto del Art. 2(11) de la Ley de Relaciones del Trabajo, supra, es perfectamente armonizable con la interpretación que valida la intención legislativa. Si la definición de instrumentalidades corporativas se lee en su totalidad se advertirá que esta menciona, en una sola oración, todas las entidades que cubre. Al final de la lista hace referencia al calificativo **"que se dedican o pueden dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario"**. 29 LPRA sec. 63(11). (Énfasis suplido). Como vimos, esas características han sido el factor determinante y denominador común entre las instrumentalidades corporativas cubiertas por la Ley de Relaciones del Trabajo. Por consiguiente, resulta compatible con el carácter técnico de la enmienda en controversia interpretar que el calificativo que se encuentra al final de la oración se extiende a todos los

componentes de la lista; es decir, aplica a todas las entidades que esta menciona. Esto incluye, por supuesto, a las corporaciones e instrumentalidades públicas a las que hace referencia al comienzo de la oración.

En consecuencia, y por todo lo anterior, la Mayoría se equivoca al concluir que la enmienda de la Ley Núm. 168-2014 extendió la aplicación de la Ley de Relaciones del Trabajo a todas las corporaciones públicas.

A

Como la última enmienda a la definición de *instrumentalidades corporativas* no fue sustantiva, se debió examinar si la UPR opera como una empresa privada o con fines de lucro o se dedica a actividades que tengan como objeto un beneficio pecuniario. Lo anterior, para determinar si le aplica la Ley de Relaciones del Trabajo. La conclusión inequívoca es que no.

Primero, este Tribunal ha determinado en varias ocasiones que la UPR no opera como un negocio privado. Así, en Sepúlveda v. U.P.R., 115 DPR 526 (1984), expresó:

> No se cuestiona la naturaleza y propósitos de la [UPR]. **Es una corporación pública, de génesis legislativa, encargada de la educación superior en Puerto Rico** […]. Como universidad del Estado tiene una 'obligación de servicio al Pueblo de Puerto Rico'. **Económicamente funciona con fondos gubernamentales.** […] Sus estudiantes sólo cubren una ínfima parte del costo pagando una cantidad limitada por concepto de matrícula. **La universidad no opera con ánimo directo ni indirecto de lucro.** Íd., pág. 527. (Énfasis suplido).

Además, este Foro señaló que esa condición tampoco se puede inferir de la ley orgánica de la universidad, la cual le impone una obligación de servicio con el Pueblo de Puerto Rico y los ideales de nuestra sociedad democrática.[27] Es cierto que esa ley establece que la UPR "tendrá todas las atribuciones, prerrogativas, responsabilidades y funciones propias de una entidad corporativa encargada de la educación superior". Ley de la Universidad de Puerto Rico, Ley Núm. 1 de 20 de enero de 1966, según enmendada, 18 LPRA sec. 602a. Esto incluye:

> [La] autoridad para demandar y ser demandada, adquirir y poseer bienes e inmuebles, hipotecar, vender, o en cualquier forma enajenar los mismos; contraer deudas; celebrar contratos; invertir sus fondos en forma compatible con los fines y propósitos de esta Ley; adoptar y usar un sello oficial; aceptar y administrar donaciones, herencias y legados. Íd.

Sin embargo, esto no convierte a la UPR en una empresa privada dedicada a negocios lucrativos. El objetivo de esas facultades es garantizar que la UPR tenga el mayor grado de autonomía, para que funcione de manera compatible con sus propósitos.

Todo esto se reiteró en U.P.R. v. Asoc. Pur. Profs. Universitarios, 136 DPR 335 (1994). En ese caso, este Tribunal —aunque estimó innecesario resolver si la UPR era o no "patrono" para fines de la Ley de Relaciones del Trabajo— resolvió que los profesores universitarios no tenían derecho a la negociación colectiva, basado en

---

[27] Véase Art. 2 de la Ley Núm. 1 de 20 de enero de 1956, según enmendada, 18 LPRA sec. 601.

consideraciones de orden público relacionadas a la naturaleza de la UPR. La primera consideración versó sobre la situación financiera de la UPR. Al respecto, se expresó que:

> [E]n el contexto clásico, las empresas que operan con fines de lucro perciben ganancias que provienen de su capacidad de vender sus productos a precios que sobrepasan sus costos. Bajo este esquema, las decisiones gerenciales de la empresa tienen un impacto directo sobre sus ingresos, ya sea mediante el control de los costos o el aumento de los precios. **Este esquema no se da ni puede darse en la U.P.R.** Íd., págs. 397-398. (Énfasis en el original).

Se razonó que no era posible, ya que la mayor parte del presupuesto de ingresos de la UPR proviene del Fondo General y se obtiene a través de una fórmula establecida por ley sobre la cual esa entidad educativa no tiene control. Íd., pág. 398.[28] Además, se entendió que es poco probable que la UPR aumente significativamente sus ingresos por aumentar el precio de los servicios incidentales que presta a sus constituyentes (residencias, cafeterías, librerías, entre otros). Íd., págs. 398-399. Por otro lado, se consideró que las matrículas y cuotas que cobra solo cubren una ínfima parte de los gastos operacionales. Se concluyó que la UPR no tiene medios suficientes para generar ingresos propios, no tiene plena autonomía fiscal y

---

[28] Actualmente esta fórmula no se utiliza pues, ante la crisis fiscal del Gobierno, la aportación del Fondo General a la UPR se fija en conformidad con los parámetros que dispone la Sección 201 del Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 USC sec. 2141, para establecer el Plan Fiscal del Gobierno. Esto sugiere un grado de control incluso menor de la UPR sobre sus finanzas.

el presupuesto está muy comprometido con los gastos recurrentes de la nómina universitaria. Por lo tanto, "la UPR no tiene ni remotamente el espacio que tienen las empresas privadas para manipular los elementos de costos y ganancias de modo que pueda encarar con éxito los reclamos que inevitablemente surgen de la negociación colectiva". Íd., pág. 401.[29] Se discutieron, además, las características particulares de los empleados de la UPR —en ese caso de los profesores— que los distinguen de los trabajadores de la empresa privada. Íd.

En fin, allí este Tribunal sentenció como ilusoria la pretensión de que la UPR pudiese cambiar su funcionamiento para operar como una empresa privada y dedicarse a negocios lucrativos. Añadió que "revela además una crasa ignorancia de lo que es una universidad del Estado y de lo que representa, y ha representado, […] en la historia del país." Íd. Así, al igual que en el caso anterior, este Foro declaró inequívocamente que la UPR, aunque es una corporación pública, no se dedica ni funciona como una empresa o negocio privado.[30]

---

[29] Se añadió: "La Junta debió cuestionarse con criterios de realidad si una institución atribulada, como lo es la U.P.R., puede sobrevivir exitosamente la experiencia de la negociación colectiva, cuando tiene muy poco control sobre sus ingresos principales y sus costos principales." Íd., pág. 401.

[30] Ante ello, y ante la naturaleza singular de la UPR, era innecesario aplicar los criterios establecidos en A.A.A. v. Unión Empleados A.A.A., 105 DPR 437 (1976) para determinar si una agencia o corporación pública opera como una empresa privada.

Veintiséis años después, no existen elementos que conduzcan a una interpretación distinta.[31] Por el contrario, ante el panorama social y fiscal existente, la UPR se consolida como la única universidad del Estado, y como la principal institución de educación superior del País con un extenso y extraordinario historial de aportaciones al bienestar general. La UPR ostenta una posición única en nuestra sociedad, y es así por disposición expresa de la Asamblea Legislativa que le encomienda asegurar la educación de los sectores importantes de nuestra sociedad y de fomentar el desarrollo de la cultura de nuestro pueblo. Art. 2 de la Ley de la Universidad de Puerto Rico, 18 LPRA sec. 601. Es decir, que "[n]o se trata de una institución común u ordinaria, ni mucho menos del establecimiento industrial o comercial corriente que dispone la Ley de Relaciones del Trabajo de Puerto Rico". U.P.R. v. Asoc. Pur. Profs. Universitarios, supra.

Por otra parte, es imprescindible destacar que la Asamblea Legislativa agrupa a la UPR dentro de las entidades **que no funcionan como negocios privados** y que, como tal, están fuera del alcance de la Ley de Relaciones del Trabajo. Esto se deduce de la exclusión expresa de la

---

[31] De hecho, recientemente este Tribunal ha reiterado en otros contextos que la UPR no funciona con ánimo de lucro. Véase Cordero Jiménez v. U.P.R., 188 DPR 129 (2013). El foro federal también lo ha reiterado: "Defendant does not operate as a private business or enterprise; the U.P.R., is a non-profit organization. As a non-profit organization, it renders public services directed towards offering higher education to the people of Puerto Rico." Huertas-Gonzalez v. Univ. of Puerto Rico, 520 F. Supp. 2d 304, 315 (D.P.R. 2007).

UPR de la Ley Núm. 45-1998, la cual aplica a las entidades gubernamentales que **no operen como negocios privados.** Nótese que, de lo contrario, el legislador no hubiese excluido a la UPR de la aplicación de la Ley Núm. 45-1998. Esto confirma, forzosamente, que la UPR no es una instrumentalidad corporativa y, por consiguiente, tampoco un patrono bajo la Ley de Relaciones del Trabajo.

Más aún, la exclusión expresa de la UPR de la Ley Núm. 45-1998 revela la política pública clara de excluir a la UPR de la legislación que provee para la negociación colectiva. Esa política pública, que se ha avalado a través de los años, responde a la función singular que realiza la principal institución educativa del País y -en ausencia de una expresión legislativa inequívoca en contrario- se debió sostener.[32]

Como la decisión de la Mayoría contraviene la intención legislativa al aprobar la Ley Núm. 168-2014 y, en consecuencia, altera incorrectamente el ámbito de

---

[32] La Mayoría reconoce el impacto de su decisión sobre las finanzas de la UPR. Opinión Mayoritaria, pág. 18. Sobre esto, señala que se debe presumir que el legislador consideró el efecto de la enmienda a la definición de *instrumentalidades corporativas* en esas finanzas. Íd., pág. 19. No obstante, el historial legislativo de la Ley Núm. 168-2014 rebate esa "presunción", pues la Comisión de Asuntos Laborales y Sistemas de Retiro del Servicio Público de la Cámara de Representantes concluyó que "la aprobación de [la Ley Núm. 168-2014] **no conlleva[ba] impacto fiscal adverso sobre los presupuestos de las** agencias, departamentos, organismos, instrumentalidades o **corporaciones públicas**". Informe Positivo de la Comisión de Asuntos Laborales y Sistemas de Retiro del Servicio Público de la Cámara de Representantes, supra, pág. 5. (Énfasis suplido). Esto comprueba que las enmiendas que la Ley Núm. 168-2014 introdujo a la Ley de Relaciones del Trabajo fueron unas meramente técnicas, que no tuvieron el propósito y la consecuencia trascendental de alterar su ámbito de aplicación, lo cual hubiese ameritado una conclusión distinta sobre el impacto fiscal de la medida.

aplicación de la Ley de Relaciones del Trabajo y la política pública de excluir a la UPR de los estatutos que reconocen el derecho a la negociación colectiva, disiento.


                              Maite D. Oronoz Rodríguez
                                 *Jueza Presidenta*